**UNITED STATES COURT OF APPEALS**
**For the Fifth Circuit**

_____

No. 95-20635
_____


ANTHONY RAY WESTLEY,

Petitioner-Appellant,

VERSUS


GARY L. JOHNSON, DIRECTOR,
TEXAS DEPARTMENT OF CRIMINAL JUSTICE,
INSTITUTIONAL DIVISION,

Respondent-Appellee.

_____

Appeal from the United States District Court
for the Southern District of Texas, Houston Division
_____

May 13, 1996


Before DAVIS, BARKSDALE, and DeMOSS, Circuit Judges.

DAVIS, Circuit Judge:

Anthony Ray Westley, convicted of murder and sentenced to death by a Texas state court, appeals from the district court's denial of his petition for a writ of habeas corpus.  For the reasons discussed below, we affirm.

I.

On Friday, April 13, 1984, Debra Young (Young) was working in Eileen's Bait and Tackle, owned by Chester Frank Hall (Hall) and his wife, Eileen.  At approximately 1:45 pm, Anthony Ray Westley (Westley), John Dale Henry (Henry), and Walter Dunbar (Dunbar) entered the store.  Hall had just walked out to go home.  According to Young, Westley went up to her at the counter and asked for

fishing worms.  While she was preparing the bait, Westley grabbed her and stuck a gun in her face.  Young started screaming and Westley threatened her:  "Shut up, or I will kill you."  He then demanded money and struck her in the chest, knocking her against the wall.  Young opened the cash register and Westley ordered her to lie down behind the counter.  Westley grabbed the money and then noticed a pistol case and money bag behind the counter, both empty.  He patted Young's pockets for the gun and demanded the rest of the money.  Young said her boss had taken it.  Westley then told Young to turn her face to the wall and put a gun in her back.  At that point, the bell on the front door rang as Hall entered the shop.

Westley stood, fired a shot toward the door, and ran out from behind the counter.  Young testified that Westley fired the first shot, but then she heard a rapid succession of gunshots from both large and small caliber pistols, including Hall's small derringer.  Young rose to a crouching position and peered over the counter.  She saw Hall running toward the store's office with Westley and Henry in pursuit.  Westley caught Hall before he reached the office and a struggle ensued.  Young testified that Westley repeatedly hit Hall's head against a concrete fish tank.  She also heard three to five more gunshots, none of which sounded like Hall's gun.  Then she heard a final shot from the direction of Westley and Hall who were still scuffling and saw both men jerk.

Westley then ran from the store followed by Henry, who was wounded.  Dunbar had been shot and was dying on the floor.  Hall rose to his feet, came toward Young, collapsed and died.  The next

day, April 14, 1984, Young positively identified Westley at a line-up as the assailant who had threatened her and fought with Hall.

Officers from the Harris County Sheriff's Office arrived shortly after the shooting. Two guns were found at the scene--a .25 caliber automatic by Dunbar's body and a five shot .22 caliber derringer by Hall's. Also, two .38 caliber slugs were recovered from the floor of the shop. During the investigation of the crime scene, three women--Sefaneze Henry, Martha Walker, and Chrischilla Cousan--arrived to view Dunbar, the assailant who had been killed. Sometime later, officers discovered that Dunbar lived at the same address as these three women. After questioning these women again, the police believed the other two robbers to be Westley and Henry.

At 9:50 a.m. on April 14, 1984, Westley, accompanied by his father, turned himself in to the police. Westley gave a written confession in which he admitted carrying a .22 caliber cowboy-style pistol and participating in the aggravated robbery. He also stated that Henry carried a .38 caliber pistol and was the one who threatened Young during the robbery. This statement was admitted as evidence at Westley's trial after a hearing in which the court found that it was given voluntarily.

The State also produced two witnesses at trial who saw two men run from the bait shop and flee in the getaway car. This car was eventually found a few miles from the residence of Walter Dunbar. Inside the car, police found two rolls of pennies believed to have been taken from the office of the bait shop.

A security guard and nurse at Northeast Memorial Hospital identified Westley and Henry as the two men who came to the

3

emergency room at about 2:00 p.m. on April 13, 1984, for treatment of Henry's gunshot wound.

The medical examiner testified that Hall died from a gunshot wound that had been fired within six inches of the victim. At Westley's trial, C. E. Anderson, the state firearms examiner, testified that the fatal bullet was a .22 caliber long rifle, which could not be traced to either gun found at the scene. The firearms carried by Westley and Henry were never recovered. Anderson identified State's Exhibit No. 17, a picture of a cowboy-style handgun, as a long-barrel Ruger .22 caliber. Young and other witnesses identified the pistol depicted in this exhibit as similar to the type of gun Westley carried. On cross-examination, Anderson admitted that larger caliber handguns from the side looked like Exhibit 17 and that only an outside chance existed that this Ruger-style gun fired the fatal bullet. But Anderson maintained that other manufacturers made this style .22 from which the fatal round could have been fired.

Chrischilla Cousan, Henry's fifteen-year-old niece who lived in the same house as Westley, testified that she had seen Westley, Henry, and Dunbar talking on the morning of the robbery. She also saw Westley carrying a large, black pistol similar to Exhibit 17. Bertha Cousan, Henry's sister and another resident of the house, saw Westley carrying a dark, long-barreled pistol which looked like Exhibit 17. She also overheard Westley the night after the robbery relate that he had "wasted this white man," that Henry had been shot, and that Dunbar had died at the bait and tackle shop.

4

Both Westley and Henry were indicted for capital murder, but were tried separately. At Henry's trial, which was concluded on January 24, 1985, three months prior to Westley's trial, the State dropped the murder charge and Henry was convicted of aggravated robbery.

Westley was tried and convicted of capital murder on May 10, 1985. At the punishment phase of his trial, the State introduced evidence of two similar extraneous offenses. On May 29, 1982, Westley tried to rob the owner of a jewelry store. The owner testified that Westley pointed the gun at his head and pulled the trigger, but the gun did not fire. Westley pulled the trigger a second time shooting the owner in the chest and then fled. On April 3, 1984, Westley and one accomplice robbed a real estate office. Three victims testified and identified Westley. Two of the witnesses also stated Westley had carried a large, black pistol.

In addition, the State introduced Westley's conviction of burglary after a guilty plea on February 2, 1978. He was given probation which was revoked when he committed a second burglary the day after his guilty plea.

Westley called five witnesses to testify that he was a fun person and had a good reputation for being peaceful and law-abiding. Three of the witnesses emphasized that Westley had grown up in a poor neighborhood. His father, Ellis Miller, testified that Westley was sorry for what he had done. None of the five were aware of his two burglary convictions.

On May 14, 1985, after the jury affirmatively answered the required special issues set out in Art. 37.071(b), V.A.C.C.P.,[1] Westley was sentenced to death. The Texas Court of Criminal Appeals affirmed the conviction and sentence; certiorari was denied by the Supreme Court. Westley v. State, 754 S.W.2d 224 (Tex. Cr. App. 1988), cert. denied, 492 U.S. 911, 109 S.Ct. 3229 (1989).

On October 12, 1989, Westley filed an application for writ of habeas corpus in the state trial court. A special master was appointed to conduct an evidentiary hearing. The master filed his proposed findings of fact and conclusions of law, recommending that Westley be granted relief. The trial court adopted the facts and conclusions and also recommended Westley be granted habeas relief. The Texas Court of Criminal Appeals summarily denied Westley's application. Ex Parte Westley, No. 22,911-01 (Tex.Crim.App. May 6, 1992) (unpublished).

Westley then filed a petition for writ of habeas corpus in the federal district court. Both Westley and the State moved for summary judgment. The district court referred the case to a magistrate who reviewed the state court findings and supporting

---

Article 37.071(b) then provided:

> (b) On conclusion of the presentation of the evidence, the court shall submit the following issues to the jury:
>     (1) whether the conduct of the defendant that caused the death of the deceased was committed deliberately and with the reasonable expectation that the death of the deceased or another would result;
>     (2) whether there is a probability that the defendant would commit criminal acts of violence that would constitute a continuing threat to society; and
>     (3) if raised by the evidence, whether the conduct of the defendant in killing the deceased was unreasonable in response to the provocation, if any, by the deceased.

6

record and recommended Westley be granted habeas relief. The district court, however, rejected the magistrate's recommendation and entered summary judgment for the State denying habeas relief on July 7, 1995. Westley filed a timely notice of appeal and the district court issued a certificate of probable cause. He appeals the district court's finding on two of his claims: ineffective assistance of counsel and prosecutorial misconduct.

## II.

Westley initially argues that he was denied his Sixth Amendment right to effective counsel. The standard for evaluating an ineffective assistance of counsel claim comes from Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052 (1984). The habeas petitioner has the burden to demonstrate both (1) that counsel's performance was deficient and (2) that the errors are so prejudicial as to "deprive the defendant of a fair trial, a trial whose result is reliable." Id. at 687, 104 S.Ct. at 2063.

On the first prong, Strickland stated that "[j]udicial scrutiny of counsel's performance must be highly deferential." Id. at 689, 104 S.Ct. at 2065. "A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." Id. The petitioner must overcome "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id. "It is not enough to show that some, or even most, defense lawyers would have handled the case differently." Green v. Lynaugh, 868 F.2d

7

176, 178 (5th Cir.), cert. denied, 493 U.S. 831, 110 S.Ct. 102 (1989).

For the second prong, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland. 466 U.S. at 694, 104 S.Ct. at 2067. See also, Kyles v. Whitley, 115 S.Ct. 1555, 1566 (1995). In Lockhart v. Fretwell, 506 U.S. 364, 113 S.Ct. 838 (1993), the Supreme Court further narrowed the prejudice inquiry. "[A]n analysis focussing solely on mere outcome determination, without attention to whether the result of the proceeding was fundamentally unfair or unreliable, is defective." Armstead v. Scott, 37 F.3d 202, 206-07 (5th Cir. 1994), cert. denied, 115 S.Ct. 1709 (1995) (citing Fretwell, 113 S.Ct. at 844). With this legal background we now move to a consideration of Westley's specific claims of ineffective counsel.

Westley contends that his counsels' conduct was professionally unreasonable during three separate phases: the pretrial phase of investigation and case development, the guilt/innocence phase, and the punishment phase of his trial. In the pretrial phase, appellant argues that counsel was deficient in failing to adequately investigate the defense theory that Westley was not the "triggerman"--the one who shot Hall. Westley contends his counsel should have monitored the testimony and arguments presented at Henry's trial and consulted an independent ballistics expert. Westley concedes that "triggerman status" was not as prejudicial a

8

factor in the guilt/innocence phase of his trial. He agrees that under Texas law the jury was entitled to find him guilty of capital murder as a party to the offense which he admitted in his written statement. Tex. Penal Code §§ 7.01, 7.02, 19.03. He also agrees that the jury was entitled to recommend the death sentence for this conviction. In order to assess a death penalty under the Constitution, the state is only required to demonstrate "major participation in the felony committed, combined with a reckless indifference to human life." Tison v. Arizona, 481 U.S. 137, 158, 107 S.Ct. 1676, 1688 (1987). Appellant argues, however, that if he could have cast sufficient doubt on his triggerman status at the punishment phase, a reasonable probability exists that the jury in considering the required special issues would have sentenced him to life imprisonment, not death.

Strickland gives additional guidance on a failure to investigate claim:

> In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgment.
> The reasonableness of counsel's actions may be determined or substantially influenced by the defendant's own statements or actions. Counsel's actions are usually based, quite properly, on informed strategic choices made by the defendant or on information supplied by the defendant. . . . And when a defendant has given counsel reason to believe that pursuing certain investigations would be fruitless or even harmful, counsel's failure to pursue those investigations may not later be challenged as unreasonable.

Strickland, 466 U.S. at 691, 104 S.Ct. at 2066.

We must measure counsel's performance by the factual version of the crime Westley had given counsel along with the other facts the State was able to prove. Westley had given a written statement

9

to the police admitting that he carried a .22 caliber cowboy-style pistol compatible with the gun that fired the fatal bullet. Westley told his lead counsel that he carried a .22 caliber gun and he had killed Hall. Westley told Miss Cousan that he had "wasted this white man." According to the eyewitness, Ms. Young, Hall was shot at close range while scuffling with Westley. On the other hand, several witnesses living in the same house with Westley told police that they had seen Westley with a larger caliber gun, a .357, either before or after the robbery. Also Ms. Young told police shortly after the robbery that she believed Westley was carrying a large caliber gun. But at trial she identified the .22 caliber handgun in Exhibit 17 as similar in appearance to the pistol Westley was carrying.

At the state habeas hearing, counsel testified that his strategy was to save Westley's life by negating the "intent to kill" element of capital murder and the "deliberateness" special issue in the punishment phase. He wanted to convey that Westley meant only to rob the store and that the robbery turned into a confused shootout when Hall entered the bait shop and began shooting. We do not find this strategy unreasonable in light of all the evidence pointing to Westley as the shooter, especially his own statements.

Westley points to the determination of the state habeas court which held a hearing on Westley's ineffective assistance of counsel claim and concluded that counsel was ineffective for failing to attempt to demonstrate that Henry, rather than Wesley, was the shooter. We agree with appellant that findings of basic, primary

10

or historical fact made by the state habeas court are entitled to the deference mandated by 28 U.S.C. § 2254(d).[2]  But <u>Strickland</u> makes it clear that determinations of ineffectiveness of counsel are not factual findings of this nature which call for federal court deference under § 2254(d).[3]

> [A] state court conclusion that counsel rendered effective assistance is not a finding of fact binding on the federal court to the extent stated by 28 U.S.C. § 2254(d). Ineffectiveness is not a question of "basic, primary, or historical fac[t]."  Rather, like the question whether multiple representation in a particular case gave rise to a conflict of interest, it is a mixed question of law and fact. Although state court findings of fact made in the course of deciding an ineffectiveness claim are subject to the deference requirement of § 2254(d), . . . both the performance and

---

The state argued to the district court that the state habeas court findings were not entitled to deference because the Texas Court of Criminal Appeals had denied relief.  The state relied on <u>Micheaux v. Collins</u>, 944 F.2d 231 (5th Cir. 1991) (en banc), <u>cert. denied</u>, 502 U.S. 115, 112 S.Ct. 1226 (1992), in which we held that the lower court proposed findings of fact were not entitled to deference under § 2254(d) when denial of relief by the state appellate court was inconsistent with the factual findings of the lower court.  However, the state does not repeat that argument to us, but seems to agree with appellant that <u>Craker v. Procunier</u>, 756 F.2d 1212 (5th Cir. 1985), controls our case.  In its denial of relief to Westley, the Texas Court of Criminal Appeals did not reject the factual findings of the lower court.  Also, its denial was not inconsistent with the factual findings because the appellate court could have found that the facts did not warrant relief based on the appropriate legal standards.  Thus, the factual findings of the state habeas court are entitled to deference under the reasoning of <u>Craker</u>.  <u>Id.</u> at 1213-14.

Like Judge DeMoss, we have no quarrel with the state trial court's true findings of fact.  But <u>Strickland</u> requires us to exercise our own judgment on whether, under these facts, counsel's assistance was effective.  The state court's conclusions in this respect are entitled to no deference.  The dissent lists six areas where he accepts the trial court's conclusions that counsel rendered ineffective assistance.  In five of those areas, we have explained our conclusions.  Westley does not seek reversal on his ineffective assistance of counsel claim for counsel's failure to make a <u>Batson</u> objection to the state's preemptory challenges. Because the dissent does not join issue with our explanations and reasons for our conclusions, no further explanation is called for.

11

prejudice components of the ineffectiveness inquiry are mixed questions of law and fact.

_Strickland_, 466 U.S. at 698, 104 S.Ct. at 2070 (citations omitted). _See also Motley v. Collins_, 18 F.3d 1223, 1226 (5th Cir.), _cert. denied_, 115 S.Ct. 418 (1994); _Black v. Collins_, 962 F.2d 394, 401 (5th Cir.), _cert. denied_, 504 U.S. 992, 112 S.Ct. 2983 (1992); _Mattheson v. King_, 751 F.2d 1432, 1438 (5th Cir. 1985), _cert. denied_, 475 U.S. 1138, 106 S.Ct. 1798 (1986).[4]

We now consider the individual acts of counsel alleged to be deficient. First, Westley alleges that the failure to monitor Henry's aggravated robbery trial or even request a transcript was professionally unreasonable and prejudicial. If counsel had monitored Henry's trial, he would have been alerted to evidence suggesting Henry, not Westley, was the triggerman. The state habeas court commented on a number of facets of Henry's trial that could have been beneficial to Westley:

*The prosecutor (different from Westley's prosecutor) in both opening and closing arguments alluded to the possibility that Westley possessed a .357 that fired the two .38 bullets.

*Young testified that she had prior experience and familiarity with guns and believed Westley carried a large caliber gun because

---

The appellant relies on language in _Loyd v. Whitley_, 977 F.2d 149, 157 (5th Cir. 1992), _cert. denied_, 508 U.S. 911, 113 S.Ct. 2343 (1993), for the proposition that a federal court should give deference to a state court finding that a trial strategy is unreasonable. We agree that the language in _Loyd_ is confusing and equivocal but it is clear from the opinion that the court gave deference only to the findings of historical fact made by the state court. The _Loyd_ court made an independent determination on the reasonableness of counsel's conduct.

12

his gun was large, made a big boom sound and produced fire out of the barrel when fired.

*Alton Harris, a Harris County Sheriff's Deputy, testified that immediately after the robbery, Young told him that Westley's gun looked like a .357, similar to the .357 that Harris carried.

*Ronnie Phillips, a Harris County Sheriff's Detective, also testified that Young told him that she thought Westley carried a .357.

*C. E. Anderson, the state firearms expert, was asked in Henry's trial what caliber gun could the picture (Exhibit 17 in Westley's trial) represent. He answered that the gun pictured could be a .22, .38, or .357. He also testified that a .38 made more noise when shot.

We are persuaded that counsel was deficient in not at least reviewing the transcripts of Henry's trial. A reasonable counsel would have reviewed the testimony of Ms. Young and other witnesses who would eventually testify against his client.

We conclude, however, that the deficiency did not operate to Westley's prejudice at his trial. The prosecution argued in Henry's trial at one point that Westley likely had two guns and probably shot Hall. At another point she argued that the evidence was inconclusive on whether Westley or Henry carried the .22 that shot Hall. Substantially the same exculpatory evidence that Westley carried a .38 caliber was produced in Westley's trial. On cross-examination, Young repeated her testimony about the size and sound of the gun and her belief it was a .357 and admitted telling

13

the police immediately after the robbery that she thought Westley had carried a .357.

Detective Phillips testified and was cross-examined in Westley's trial concerning the circumstances of Westley's written statement to the police. However, Phillips was not questioned regarding Young's statement either by the prosecution or defense. Officer Harris did not testify at Westley's trial. But, as mentioned above, Young's statements to the police concerning the caliber of Westley's gun were elicited from Young on cross-examination.

The state's ballistic expert, Mr. Anderson, testified on direct in Westley's trial that Exhibit 17 depicted a .22 caliber Ruger-like weapon. Exhibit 17 was identified by Young and both Chrischilla and Bertha Cousan as similar to the gun Westley had. On cross-examination, Anderson did admit that larger caliber firearms looked like Exhibit 17 from the side view. Westley's counsel elicited testimony from both Bertha and Chrischilla Cousan based on their prior statements to police on the caliber of gun that Westley usually carried, a .357. But, both witnesses identified Exhibit 17 as similar to Westley's gun and admitted to knowing little about guns.

Thus, counsel was able to elicit most of the same testimony the State produced at Henry's trial. We are therefore persuaded that any benefit to Westley from counsel's full use of the Henry record would have been minimal. We do not believe this marginal benefit was sufficient to undermine confidence in the jury's verdict. We believe that the jury would have still found that

14

Westley fired the fatal shot in light of Ms. Young's eyewitness testimony and Westley's own statements that he had carried a .22 caliber cowboy-style gun and had "wasted this white man."

Appellant also contends that counsel was deficient in failing to consult an independent ballistics expert. The petitioner's ballistics expert at the state habeas hearing testified that a defense ballistics expert could have testified to a number of helpful conclusions:

*Westley, "almost obviously," carried a .38 based on the testimony of Young concerning the appearance, sound and firing characteristics of Westley's gun.

*The .22 Ruger handgun pictured in Exhibit 17 from a side view could not be distinguished from a .38 or .357.

*The Ruger pistol depicted in Exhibit 17 could not have fired the fatal bullet based on the bullet markings and that the bullet could not have been fired from any cowboy-style .22 commonly found in the Houston area.

*The trajectory of the .38 slugs were compatible with the location Westley was said to be standing.

Significantly, the expert's opinion on the caliber gun Westley carried was almost entirely based on Young's testimony, even over Westley's own statement that he carried a .22. We agree with the district court who stated, "such credibility determination, even by an expert, is not based on the physical, scientific evidence."

In light of counsel's difficulty in attacking his own client's statements and the equivocal nature of the evidence counsel would have been required to rely on to do so, we do not find unreasonable

15

his decision not to hire a ballistics expert to pursue this defense.

Appellant next argues that, at the guilt/innocence phase of the trial, counsel was deficient in failing to make a timely objection to the admission of victim impact testimony and argument and in failing to effectively combat Westley's written statement. Appellant alleges that the prosecution improperly elicited from Debra Young and from Hall's widow testimony about the impact of Hall's death and the robbery. The testimony from Debra Young concerned her state of mind during the robbery. Counsel explained that he did not object to the testimony about Young's fears because he believed this testimony was admissible.

Young's testimony served to establish an element of the underlying element of aggravated robbery; i.e., intentionally or knowingly threatening or placing another in fear of imminent bodily injury or death. Tex. Penal Code § 29.02(a)(2). Because admission of evidence of a victim's fear is admissible under Texas law when it is relevant to an underlying element, an objection would have been futile. Winkfield v. State, 792 S.W. 2d 727, 732 (Tex. App.-- Corpus Christi, 1990). Thus we do not find counsel deficient in failing to object to this testimony.

Eileen Hall testified concerning Mr. Hall's community volunteer service and other good deeds. The prosecutor also alluded to Hall's good deeds during the closing argument of the guilt/innocence phase and additionally alluded to the impact of his death on his family during the closing argument in the punishment phase. Counsel did not object or file a pre-trial motion in limine

16

to prevent the introduction of victim impact evidence. At the time of Westley's trial, victim impact testimony was inadmissible in both phases of the trial as being irrelevant. Vela v. Estelle, 708 F.2d 954 (5th Cir. 1983), cert. denied, 464 U.S. 1053, 104 S.Ct. 736 (1984). The deficiency prong of Strickland is judged by counsel's conduct under the law existing at the time of the conduct. Fretwell, 506 U.S. at 372, 113 S.Ct. at 844. Thus we find counsel deficient in failing to object to the victim impact testimony and argument that concerned Hall's family.

Even if Mrs. Hall's testimony of Mr. Hall's community activities and good human qualities and the prosecutor's arguments amount to victim impact testimony, Westley is unable to show prejudice under current law. To satisfy the prejudice prong, the appellant must prove that counsel's deficiency rendered the "result of the trial unreliable or the proceeding fundamentally unfair." Strickland, 466 U.S. at 687, 104 S.Ct. at 2064. However, in Fretwell the Supreme Court stated: "Unreliability or unfairness does not result if the ineffectiveness of counsel does not deprive the defendant of any substantive or procedural right to which the law entitles him." 506 U.S. at 372, 113 S.Ct. at 844. A habeas petitioner is not entitled to the benefit of the retroactivity rule announced in Teague v. Lane, 489 U.S. 288, 310, 109 S.Ct. 1060, 1074 (1989). Thus prejudice in this context is measured by current law and not by the law as it existed at the time of the alleged error. Fretwell, 506 U.S. at 372-73, 113 S.Ct. at 844; see also, Wilkerson v. Whitley, 28 F.3d 498 (5th Cir. 1994), cert. denied, 115 S.Ct. 740 (1995). Since both federal and Texas courts now

17

allow victim impact testimony to be admitted in the punishment phase of a trial as being relevant to moral culpability or blameworthiness, Westley is unable to show prejudice in the punishment phase by this evidence. Payne v. Tennessee, 501 U.S. 808, 827, 111 S.Ct. 2597, 2609 (1991); Smith v. State, No. 71,794, 1996 WL 73433 (Tex. Cr. App. Feb. 21, 1996); Ford v. State, No. 71,760, 1996 WL 71517 (Tex. Cr. App. Feb. 21, 1996).

Moreover, in light of the overwhelming evidence of Westley's guilt, we are convinced that this evidence had no effect on the verdict.

Westley next argues that his counsel should have developed a strategy to defuse his written admission that he was armed with a .22. During the state habeas hearing, petitioner's legal expert stated that an effective counsel would have argued that Westley switched places with Henry in his statement. At the time of his statement, Westley did not know that Hall was shot with a .22. Westley, the expert argued, thought he had shot Hall with his .38 and so switched guns and conduct with Henry when relating the robbery events.

Counsel did object to the admission of the statement on the grounds of coercion and denial of assistance of counsel. The state court held a hearing out of the presence of the jury and found the statement was given voluntarily with the proper warnings. Since Westley had been heard by another witness to say that he had shot Hall and had told his lead counsel that he shot Hall while carrying a .22, we do not find counsel deficient in failing to attack the substance of the statement.

18

Finally, Westley argues that during the punishment phase of the trial, his counsel was deficient in failing to timely request an anti-parties charge and in engaging in an improper defense argument. Appellant argues that because a law of the parties charge was given during the guilt/innocence phase, his counsel should have timely requested an anti-parties charge at the punishment phase. His counsel requested an anti-parties charge but the request was not timely and the court denied it.

In Nichols v. Scott, 69 F.3d 1255, 1268 (5th Cir. 1995), this court found that with the three special issues Texas law focusses the jury on the individual conduct of the defendant. We concluded that this structure of the punishment phase reasonably led the jury to assume the law of the parties was not applicable during this phase. Thus we agree with the state habeas court and the district court that appellant is unable to show prejudice from a failure to request an anti-parties charge during the punishment phase.

Appellant also argues that his counsel made an improper closing argument by bolstering the character of the victim Hall, by using profanity in describing the unpleasantness of a robbery, and by relating a story of visiting Westley's neighborhood.

Counsel testified in the state habeas hearing that his strategy was to attack the special issues of deliberateness and provocation. He argued that Hall would aggressively defend his possessions because he worked so hard to achieve them.[5] He wanted

Counsel argued:

> Let me move on to Special Issue No. 3. It asks whether the provocation, if you so find – and first, you've got to find provocation. You know, it's hard to work for

19

the jury to believe that Hall had sufficient provocation to engage in a shootout with the robbers. He stressed that Westley went into the bait shop only to rob, not to kill, and was provoked into shooting by Hall and his derringer.[6]

The story of counsel's visit to the Westley's old neighborhood was to gain sympathy for Westley and his circumstances.[7] Counsel wanted the jury to realize that Westley was only 24 years old and came from a rough background with little hope. Counsel also made

_____

something and have somebody take it. It's hard. It's hard. Frank Hall had worked. He had three jobs. I don't remember doing that since law school, but I have worked three jobs and I know what three jobs can do to you to try to get something. I can sense the anger of Frank Hall when people were trying to take away his property, and his response was to try and take command of the situation with a small gun. He emptied it.

Remarks by Westley's counsel on the unpleasantness of a robbery:

> Robbers go in with guns. Robbers talk bad. The people who do robberies aren't nice people. They're not your next-door neighbors. We're talking about people who walk in and talk bad and threaten other people. It's not nice. It's not pleasant, but it happens every day in Harris County, Texas. That's what we're talking about is robbers. They rob, and they took the money and they left. Every one of those robbers left. They didn't harm anybody. I know you can't erase the scars of a robbery. You can't erase the memory of a gun pointed in your nose or to your head and someone telling you, "Give me you money, motherfucker." You can't do that. No one can help you erase that memory. It will remain in your mind.

Counsel related:

> The first place I went to was the bottom in Fifth Ward, to the corner where an old nightclub used to be. I went out there and I saw all the Anthony Westleys that I knew hanging around the corner. They stayed there on the corner drinking wine, excuse the expression, talking shit, because that's what we did. They're all still there. They're all there.

20

a comment that he would not say Westley would rehabilitate himself, only Westley could decide that.[8]

Given the State's evidence of the other armed robberies and burglaries, counsel was limited in what he could argue and still retain credibility with the jury. Although the language used was rough and blunt, counsel's consistent strategy at trial was that Hall was shot during an unexpected shootout and Westley had no intent to kill. Counsel pointed out that Westley ran from the store when Hall was still standing without shooting him again.

We agree with the statements of the district court:

> Counsel's argument clearly falls within the ambit of reasonable trial strategy. Talking realistically about the background and resulting criminal path of Westley might well be a more effective appeal to the jury's compassion than painting an obviously untrue, rosy, sentimental picture that would be totally unconvincing. Counsel wished to emphasize that this man came from the ghetto, from the poverty of the Fifth Ward, and had no chance in life, unlike more fortunate individuals. Counsel's plea is only for an opportunity, life in prison rather than death, to see if Petitioner could become a better person if allowed to live.

---

Counsel stated:

> Let's go to Anthony Westley's prior criminal record. He's been to the penitentiary for burglary, three years one time and five years another. We went at the same time. They gave him probation and he messed up. He simply messed up. He didn't know what he was supposed to do. He's not a model citizen. He blew it himself. He was given a chance. He was given a chance to remain free in society among you, and he blew it. It ain't your fault. It ain't my fault. It's his fault. He went one time for three years for burglary and five years for burglary of a habitation. He went to the penitentiary and served his time. He has been punished for that. On the basis of those two extraneous offenses, they want you to say that he will be a continuing threat to society forever and ever. I would not insult your intelligence by telling you that Anthony Westley will rehabilitate himself. I don't know that. Only he knows whether he can or will. I'm not going to assume that responsibility, but if he's dead he doesn't have a chance to. He's twenty four years of age. I think he deserves that opportunity.

21

Thus we do not find counsel's performance deficient in his closing statements at the punishment phase.

III.

Appellant argues that the State was guilty of prosecutorial misconduct both for <u>Brady</u> violations and for presenting false and misleading evidence.

The suppression by the prosecution of material evidence favorable to the accused violates due process. <u>Brady v. Maryland</u>, 373 U.S. 83, 83 S.Ct. 1194 (1963). To prevail on a <u>Brady</u> claim, petitioner must prove that (1) the prosecution suppressed or withheld evidence (2) which was favorable to the defense and (3) material to either guilt or punishment. <u>Edmond v. Collins</u>, 8 F.3d 290, 293 (5th Cir. 1993). Materiality requires the petitioner to demonstrate that "there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." <u>United States v. Bagley</u>, 473 U.S. 667, 682, 105 S.Ct. 3375, 3383 (1985). In <u>Kyles</u>, the Supreme Court stated that a reasonable probability is shown when the non-disclosure "could reasonably be taken to put the whole case in such a different light as to undermine confidence in the jury verdict." 115 S.Ct. at 1566.

Appellant alleges that the prosecution did not give counsel a copy of a supplemental offense report.[9] Between Henry's and

---

This report states in the relevant part:

> After observing the weapon display for approximately 8 seconds, she immediately picked out the 22 cal. revolver with the long barrel, and stated this one is just like the one he used. I asked her if she was sure, and she replied "yes". Miss Eubanks was asked if she knew the type and caliber of weapon that

22

Westley's trials, Young came to the district attorney's office to identify Westley's gun from a photo array of different gun styles. She identified a picture of a cowboy-style gun. This picture became Exhibit 17. She also gave a statement that she still believed Westley carried a .357. The state habeas court found that counsel was not provided with this report. Counsel, however, testified that the prosecution granted him access to Westley's file and it might have been in there.

We accept the finding by the state habeas court that the report was suppressed and contained evidence favorable to the defense. Nevertheless we find this report was not material because it does not contain any significant new evidence.[10] The same exculpatory statements relative to the type of gun Westley carried was available to the defense from Young's statements she gave the police officers after the robbery. This information was elicited from Young during Westley's trial and in fact Young's testimony during trial is even more exculpatory than the report.[11]

---

she had just identified as the weapon used by the Defendant Westley. She stated it is a large caliber weapon, either a 38 or 357 caliber. She knew it was larger than a 22 caliber.

A state court finding on materiality in a prosecutorial misconduct allegation is not entitled to deference by a federal court under § 2254(d) because such finding is on a mixed question of law and fact. Wilson v. Whitley, 28 F.3d 433, 437 (5th Cir. 1994), cert. denied, 115 S.Ct. 754 (1995) (quoting Davis v. Heyd, 479 F.2d 446, 451 (5th Cir. 1973)).

The following testimony was given by Young on cross-examination:

Q.   I'll show you now what's been admitted in evidence as State's No. 17. Does that look like the gun that Westley had on April 13th?
A.   It looks like it.
Q.   As a matter of fact, the gun he had was a real big gun,

23

Appellant also contends that the prosecution committed a <u>Brady</u> violation in failing to disclose to defense counsel the inconsistent testimony from Henry's trial. In <u>Williams v. Scott</u>, 35 F.3d 159, 163 (5th Cir. 1994), <u>cert. denied</u>, 115 S.Ct. 959 (1995), the court found that a <u>Brady</u> violation does not arise if the defendant, using reasonable diligence, could have obtained the information. Because the transcript of Henry's trial was readily available, we find no <u>Brady</u> violation.

Finally, appellant argues that the prosecution presented false and misleading testimony that violated his due process rights. To prevail on this due process claim, the petitioner must show that (1) the testimony was false, (2) the testimony was material to the verdict, and (3) the prosecutor knew or believed the testimony to be false. <u>United States v. Blackburn</u>, 9 F.3d 353, 357 (5th Cir. 1993), <u>cert. denied</u>, 115 S.Ct. 102 (1994). False evidence is "material" only "if there is any reasonable likelihood that the false testimony could have affected the jury's verdict." <u>Kirkpatrick v. Whitley</u>, 992 F.2d 491, 497 (5th Cir. 1993) (quoting <u>United States v. Bagley</u>, 473 U.S. 667, 669 n. 9, 105 S.Ct. 3375, 3382 n.9 (1985).

Appellant contends that the prosecution introduced misleading evidence at trial in the testimony relating to Exhibit 17. Exhibit 17 was identified by Anderson, the ballistics expert, as a side

---

        wasn't it?
A.      It was a big gun.
Q.      Do you recall telling the police officers, ma'am, that
        you thought it was a .357 magnum?
A.      Yes, I remember telling them that.
Q.      It looked that big to you?
A.      It did.  It looked bigger.  It looked like a cannon.

24

view of a .22 caliber handgun.  Appellant argues that because a .38 and .357 caliber look similar to Exhibit 17 from the side, this was misleading testimony.  The prosecution used this picture to discredit the witnesses who stated they saw Westley with a .357 handgun by gaining admissions from those witnesses that the pistol depicted in Exhibit 17 was the type gun Westley carried.  Counsel on cross-examination of Anderson elicited testimony that in fact larger caliber pistols did look similar to Exhibit 17.

Even if we are bound by the state habeas court's determination that the State's use of Exhibit 17 was misleading,[12] the claim fails because the testimony related to this exhibit was not material given Anderson's admissions on cross-examination and given Westley's own statement that he carried a .22.

IV.

Finally, appellant alleges a violation of his due process right by cumulative error.  In Derden v. McNeel, 978 F.2d 1453, 1454 (5th Cir. 1992), cert. denied, 113 S.Ct. 2928 (1993), the en banc court recognized an independent claim based on cumulative error only where "(1) the individual errors involved matters of constitutional dimensions rather than mere violations of state law; (2) the errors were not procedurally defaulted for habeas purposes; and (3) the errors 'so infected the entire trial that the resulting conviction violates due process.'" Id., quoting Cupp v. Naughten, 414 U.S. 141, 147, 94 S.Ct. 396, 400 (1973).  Meritless claims or

_____

See, May v. Collins, 955 F.2d 299, 315 (5th Cir.), cert. denied, 504 U.S. 901, 112 S.Ct. 1925 (1992).

25

claims that are not prejudicial cannot be cumulated, regardless of the total number raised.  Derden, 978 at 1461.

Applying this standard to today's case, we find no violation of Westley's due process based on cumulative error.

V.

For the reasons discussed above, we affirm the district court's denial of appellant's habeas petition.

AFFIRMED.

DeMOSS, Circuit Judge, dissenting:

I am unable to join my colleagues in the majority and write to express my dissent.

The person who is in the best position to evaluate and make a judgment regarding the sufficiency of appointed counsel's conduct during a state death penalty trial is the state district judge before whom that case is being tried.  That is especially true in this case where the state district judge who tried the case originally did not appoint the counsel to represent Westley and he could truly and impartially assess the conduct of appointed counsel.  When Westley filed his first state habeas corpus proceeding, the state trial judge appointed a special master to conduct a hearing and take evidence, pro and con, on the issue of sufficiency of trial counsel.  The special master heard evidence from numerous witnesses and wrote a comprehensive report to the state trial judge recommending that the writ of habeas corpus be granted because of numerous instances of inadequate, insufficient and incompetent performance on the part of appointed counsel.  The

26

state trial judge adopted the special master's report, made extensive findings of fact, and forwarded a recommendation to the Texas Court of Criminal Appeals that habeas corpus be granted for the reasons stated in that report.  The Texas Court of Criminal Appeals summarily denied the petition for habeas corpus, without conducting any further hearing of any kind; without making any new or additional findings of fact; without defining which of the factfindings, if any, in the state trial judge's report were "clearly erroneous"; and without defining any errors of law which may have been in the state trial judge's report.  Under these circumstances, my reading of **Sumner v. Mata**, 449 U.S. 539, 101 S. Ct. 764, 66 L.Ed.2d 722 (1981) (the interest in federalism recognized by Congress in enacting § 2254(d) requires deference by federal courts to factual determinations of all state courts); and **Craker v. Procunier**, 756 F.2d 1212 (5th Cir. 1985) (the state trial court in this case clearly satisfies the requirements of **Sumner**; its factual findings are thus entitled to a presumption of correctness), leads me to conclude that in this federal habeas corpus proceeding, the federal court must give deference to those factual findings.

The voluminous findings of fact by the special master at the state habeas hearing (which were adopted by the state trial judge who actually tried the original criminal case against Westley) lead the state special master to recommend and the state trial judge to adopt the following conclusions as to the ineffectiveness of appointed counsel for Westley:

> 1.  Ineffective assistance of counsel for counsel's failure to object to the state's use of peremptory challenges to exclude black venire members (4-14);

2. Ineffective assistance of counsel for counsel's failure to obtain critical portions of the statement of facts from the codefendant's trial and to consult an independent ballistics expert (14-24);

3. Ineffective assistance of counsel for counsel's failure to object to the state's use of victim impact evidence at trial and final argument (24-35);

4. Ineffective assistance of counsel due to counsel's final argument during the punishment stage of the trial (44-47);

5. Ineffective assistance of counsel for counsel's failure to formulate a sound trial strategy for defusing Westley's admission that []he was armed with a .22 caliber weapon during the robbery and murder (52-56); and

6. Ineffective assistance of counsel for counsel's failure to become familiar with the critical legal issues involved in 2-5, above, so as to preserve them for appellate review (47-52).

Upon filing of this federal habeas petition, the federal magistrate to whom Westley's petition was referred reviewed all of the state records and came to virtually the same set of conclusions as to ineffectiveness of counsel, and recommended to the federal district judge that habeas corpus be granted. In a comprehensive memorandum and order, the federal district judge rejected the magistrate's recommendation and granted the state's motion for summary judgment denying the writ of habeas corpus. Neither the federal magistrate nor the United States district judge held any further evidentiary hearings; each simply reviewed the record established in the evidentiary hearing for the state habeas corpus petition. I am unable to join my colleagues in affirming the district court's judgment for the following reasons.

28

a.    I read the admonition of the Supreme Court, in **Kyles v. Whitley**, ___ U.S. ___, 115 S. Ct. 1555, that "our duty to search for constitutional error with painstaking care is never more exacting than it is in a capital case" as meaning what it says.  In **Kyles**, the grounds for habeas corpus relief was that the State of Louisiana had failed to disclose certain evidence which would have cast doubt on the eyewitness identification of Kyles as the murderer.  The Louisiana trial court denied habeas relief and the Louisiana State Supreme Court denied discretionary review.  In a federal habeas proceeding, the United States district court denied relief and a panel of the Fifth Circuit by a split vote affirmed the federal district court.  The Supreme Court granted certiorari and reversed.  If the Supreme Court's quoted admonition would apply in **Kyles** where all four of the lower courts had concluded that habeas relief should be denied, then surely we should heed it here in **Westley** where the state trial judge made copious findings of fact and conclusions of law supporting its determination that habeas relief should be granted.

b.    We have in this **Westley** case the non-typical circumstance that the state trial court which conducted the state habeas evidentiary hearing (a hearing in which ten live witnesses testified and roughly 100 exhibits were introduced and which generated a nine volume record consisting of 1,500 pages) made 230 separate findings of fact, exclusive of conclusions of law, which clearly supported the six conclusions of the state trial court supporting its ultimate

29

recommendation that habeas corpus should be granted to Westley. The Texas Court of Criminal Appeals in a five-to-four per curiam opinion simply denied the petition for habeas corpus relief. As indicated earlier in this dissent, I believe this circumstance is controlled by our Circuit's decision in **Craker**, and it appears from footnotes 2 and 3 in the majority opinion that the panel majority likewise recognizes that all 230 of the factual findings by the state trial court are entitled to deference under 28 U.S.C. 2254(d).

Upon filing of the federal habeas corpus proceeding, neither the state nor Westley moved for any further evidentiary hearing and each side filed their own motions for summary judgment. The issue before the federal court, therefore, was, taking all 230 of the factual findings made by the state trial court as being correct, did those facts establish a constitutional claim of ineffective counsel and/or prosecutorial misconduct which would entitle Westley to the relief of habeas corpus. This is the approach adopted by the federal magistrate who determined that some of Westley's claims were not supported by these factual findings, but there were sufficient claims of both ineffectiveness of counsel and prosecutorial misconduct to justify an award of habeas corpus relief.

The federal district judge, however, chose to go another route. Reading **Micheaux**, 944 F.2d 231, as freeing her from any obligation to show deference to the fact-findings of the state habeas evidentiary hearing, suggesting that the use of a special master to conduct the state habeas corpus evidentiary hearing

30

somehow "attenuated" the factfindings by the state trial judge and finding that the magistrate did not sufficiently distinguish between fact-findings and conclusions of law, the federal district judge launched into a wholesale review of the state habeas corpus record and the trial records of Westley and his co-defendant just as if she had been presiding at the state habeas corpus evidentiary hearing and ended up making credibility assessments, weighing evidence and determining issues of both fact and law. In my view, that course of conduct by the federal district judge was certainly inconsistent with what we normally deem appropriate for summary judgment proceedings and conduct which, in my view, renders the deference requirement of § 2254(d) as hollow and meaningless.

I have read all 230 of the factfindings by the state trial court from the habeas evidentiary hearing and deeming them correct, my confidence in the jury verdict in Westley's criminal trial is completely undermined. The fundamental purpose of the Great Writ contemplated by §§ 2241 - 2254 of Title 28 is protection of the individual from unconstitutional trials. When a state trial judge who tried an individual defendant is later presented with a state habeas corpus proceeding in which he makes factual findings which leads him to the conclusion that this same defendant did not receive the constitutional guarantee of a fair trial and the state appellate court makes no attempt to articulate the reasons why the state trial judge's factual determinations or legal conclusions were wrong, then, in a subsequent federal habeas corpus hearing, we should put the same burden on the state under Rule 2454(d) to prove "by convincing evidence that the factual determination by the state

court was erroneous" as we would put on the petitioner if the state trial court conducting the habeas corpus evidentiary hearing had made findings of fact and conclusions of law denying the habeas corpus petition.

In this **Westley** case, the state has come nowhere near making such showing of error as to any of the factual determinations by the state trial court. Accordingly, we should accept as correct all of the factual determinations in this case by the state habeas corpus hearing trial court and our task then becomes simply to determine whether those factual findings support the claims for habeas corpus relief. If the state court findings in this case do not satisfy both the "ineffectiveness" and "prejudice" prongs of **Strickland**, then in my view, there is no such animal as an "ineffective counsel" and we should quit talking as if there is.

I have no hesitation in concluding that the state trial court factual findings support the claims for habeas relief in this case and I respectfully dissent from the conclusions of the majority to the contrary.

## No. 95-20635    WESTLEY V. COLLINS

DeMOSS, Circuit Judge, dissenting:

I am unable to join my colleagues in the majority and write to express my dissent.

The person who is in the best position to evaluate and make a judgment regarding the sufficiency of appointed counsel's conduct

during a state death penalty trial is the state district judge before whom that case is being tried. That is especially true in this case where the state district judge who tried the case originally did not appoint the counsel to represent Westley and he could truly and impartially assess the conduct of appointed counsel. When Westley filed his first state habeas corpus proceeding, the state trial judge appointed a special master to conduct a hearing and take evidence, pro and con, on the issue of sufficiency of trial counsel. The special master heard evidence from numerous witnesses and wrote a comprehensive report to the state trial judge recommending that the writ of habeas corpus be granted because of numerous instances of inadequate, insufficient and incompetent performance on the part of appointed counsel. The state trial judge adopted the special master's report, made extensive findings of fact, and forwarded a recommendation to the Texas Court of Criminal Appeals that habeas corpus be granted for the reasons stated in that report. The Texas Court of Criminal Appeals summarily denied the petition for habeas corpus, without conducting any further hearing of any kind; without making any new or additional findings of fact; without defining which of the factfindings, if any, in the state trial judge's report were "clearly erroneous"; and without defining any errors of law which may have been in the state trial judge's report. Under these circumstances, my reading of **Sumner v. Mata**, 449 U.S. 539, 101 S. Ct. 764, 66 L.Ed.2d 722 (1981) (the interest in federalism recognized by Congress in enacting § 2254(d) requires deference by federal courts to factual determinations of all state courts); and

**Craker v. Procunier**, 756 F.2d 1212 (5th Cir. 1985) (the state trial court in this case clearly satisfies the requirements of **Sumner**; its factual findings are thus entitled to a presumption of correctness), leads me to conclude that in this federal habeas corpus proceeding, the federal court must give deference to those factual findings.

The voluminous findings of fact by the special master at the state habeas hearing (which were adopted by the state trial judge who actually tried the original criminal case against Westley) lead the state special master to recommend and the state trial judge to adopt the following conclusions as to the ineffectiveness of appointed counsel for Westley:

> 1. Ineffective assistance of counsel for counsel's failure to object to the state's use of peremptory challenges to exclude black venire members (4-14);
>
> 2. Ineffective assistance of counsel for counsel's failure to obtain critical portions of the statement of facts from the codefendant's trial and to consult an independent ballistics expert (14-24);
>
> 3. Ineffective assistance of counsel for counsel's failure to object to the state's use of victim impact evidence at trial and final argument (24-35);
>
> 4. Ineffective assistance of counsel due to counsel's final argument during the punishment stage of the trial (44-47);
>
> 5. Ineffective assistance of counsel for counsel's failure to formulate a sound trial strategy for defusing Westley's admission that []he was armed with a .22 caliber weapon during the robbery and murder (52-56); and
>
> 6. Ineffective assistance of counsel for counsel's failure to become familiar with the

critical legal issues involved in 2-5, above, so as
to preserve them for appellate review (47-52).

Upon filing of this federal habeas petition, the federal
magistrate to whom Westley's petition was referred reviewed all of
the state records and came to virtually the same set of conclusions
as to ineffectiveness of counsel, and recommended to the federal
district judge that habeas corpus be granted.  In a comprehensive
memorandum and order, the federal district judge rejected the
magistrate's recommendation and granted the state's motion for
summary judgment denying the writ of habeas corpus.  Neither the
federal magistrate nor the United States district judge held any
further evidentiary hearings; each simply reviewed the record
established in the evidentiary hearing for the state habeas corpus
petition.  I am unable to join my colleagues in affirming the
district court's judgment for the following reasons.

   a.   I read the admonition of the Supreme Court, in **Kyles
   v. Whitley**, ___ U.S. ___, 115 S. Ct. 1555, that "our duty to
   search for constitutional error with painstaking care is never
   more exacting than it is in a capital case" as meaning what it
   says.  In **Kyles**, the grounds for habeas corpus relief was that
   the State of Louisiana had failed to disclose certain evidence
   which would have cast doubt on the eyewitness identification
   of Kyles as the murderer.  The Louisiana trial court <u>denied</u>
   habeas relief and the Louisiana State Supreme Court <u>denied</u>
   discretionary review.  In a federal habeas proceeding, the
   United States district court <u>denied</u> relief and a panel of the
   Fifth Circuit by a split vote affirmed the federal district

court. The Supreme Court granted certiorari and reversed. If the Supreme Court's quoted admonition would apply in **Kyles** where all four of the lower courts had concluded that habeas relief should be denied, then surely we should heed it here in **Westley** where the state trial judge made copious findings of fact and conclusions of law supporting its determination that habeas relief should be granted.

b. We have in this **Westley** case the non-typical circumstance that the state trial court which conducted the state habeas evidentiary hearing (a hearing in which ten live witnesses testified and roughly 100 exhibits were introduced and which generated a nine volume record consisting of 1,500 pages) made 230 separate findings of fact, exclusive of conclusions of law, which clearly supported the six conclusions of the state trial court supporting its ultimate recommendation that habeas corpus should be granted to Westley. The Texas Court of Criminal Appeals in a five-to-four per curiam opinion simply denied the petition for habeas corpus relief. As indicated earlier in this dissent, I believe this circumstance is controlled by our Circuit's decision in **Craker**, and it appears from footnotes 2 and 3 in the majority opinion that the panel majority likewise recognizes that all 230 of the factual findings by the state trial court are entitled to deference under 28 U.S.C. 2254(d). Upon filing of the federal habeas corpus proceeding, neither the state nor Westley moved for any further evidentiary hearing and each side filed their own motions for summary judgment. The issue

before the federal court, therefore, was, taking all 230 of the factual findings made by the state trial court as being correct, did those facts establish a constitutional claim of ineffective counsel and/or prosecutorial misconduct which would entitle Westley to the relief of habeas corpus. This is the approach adopted by the federal magistrate who determined that some of Westley's claims were not supported by these factual findings, but there were sufficient claims of both ineffectiveness of counsel and prosecutorial misconduct to justify an award of habeas corpus relief.

The federal district judge, however, chose to go another route. Reading **Micheaux**, 944 F.2d 231, as freeing her from any obligation to show deference to the fact-findings of the state habeas evidentiary hearing, suggesting that the use of a special master to conduct the state habeas corpus evidentiary hearing somehow "attenuated" the factfindings by the state trial judge and finding that the magistrate did not sufficiently distinguish between fact-findings and conclusions of law, the federal district judge launched into a wholesale review of the state habeas corpus record and the trial records of Westley and his co-defendant just as if she had been presiding at the state habeas corpus evidentiary hearing and ended up making credibility assessments, weighing evidence and determining issues of both fact and law. In my view, that course of conduct by the federal district judge was certainly inconsistent with what we normally deem appropriate for summary judgment proceedings and conduct which, in my view, renders the deference requirement of § 2254(d) as hollow and meaningless.

I have read all 230 of the factfindings by the state trial court from the habeas evidentiary hearing and deeming them correct, my confidence in the jury verdict in Westley's criminal trial is completely undermined. The fundamental purpose of the Great Writ contemplated by §§ 2241 - 2254 of Title 28 is protection of the individual from unconstitutional trials. When a state trial judge who tried an individual defendant is later presented with a state habeas corpus proceeding in which he makes factual findings which leads him to the conclusion that this same defendant did not receive the constitutional guarantee of a fair trial and the state appellate court makes no attempt to articulate the reasons why the state trial judge's factual determinations or legal conclusions were wrong, then, in a subsequent federal habeas corpus hearing, we should put the same burden on the state under Rule 2454(d) to prove "by convincing evidence that the factual determination by the state court was erroneous" as we would put on the petitioner if the state trial court conducting the habeas corpus evidentiary hearing had made findings of fact and conclusions of law denying the habeas corpus petition.

In this **Westley** case, the state has come nowhere near making such showing of error as to any of the factual determinations by the state trial court. Accordingly, we should accept as correct all of the factual determinations in this case by the state habeas corpus hearing trial court and our task then becomes simply to determine whether those factual findings support the claims for habeas corpus relief. If the state court findings in this case do not satisfy both the "ineffectiveness" and "prejudice" prongs of

**Strickland**, then in my view, there is no such animal as an "ineffective counsel" and we should quit talking as if there is.

I have no hesitation in concluding that the state trial court factual findings support the claims for habeas relief in this case and I respectfully dissent from the conclusions of the majority to the contrary.