******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

ANTONIO A.* *v.* COMMISSIONER
OF CORRECTION
(AC 33746)

Bear, Keller and Schaller, Js.

*Argued January 8—officially released March 18, 2014*

(Appeal from Superior Court, judicial district of
Tolland, Fuger, J.)

*Damon A. R. Kirschbaum*, with whom, on the brief,
was *Jennifer B. Smith*, for the appellant (petitioner).

*Rita M. Shair*, senior assistant state's attorney, with
whom were *Gail P. Hardy*, state's attorney, and, on
the brief, *Jo Anne Sulik*, supervisory assistant state's
attorney, for the appellee (respondent).

*Opinion*

BEAR, J. The petitioner, Antonio A., appeals from the judgment of the habeas court denying his petition for a writ of habeas corpus. On appeal, the petitioner claims that the court erred in denying his petition because his "constitutional right to the effective assistance of trial counsel, under the [s]ixth and [f]ourteenth [a]mendments to the United States [c]onstitution, was violated." We affirm the judgment of the habeas court.

The following facts, as set forth in the petitioner's direct appeal; *State* v. *Antonio A.*, 90 Conn. App. 286, 878 A.2d 358, cert. denied, 275 Conn. 926, 883 A.2d 1246 (2005), cert. denied, 546 U.S. 1189, 126 S. Ct. 1373, 164 L. Ed. 2d 81 (2006); are relevant to the resolution of the petitioner's appeal. "On the evening of August 12, 2001, the [petitioner] returned home from work. His daughter, the victim, who had become eight years old the previous day, was sleeping in the living room. The [petitioner] inserted his finger into the victim's vagina two times. The victim later told her mother, who did not live with the [petitioner], what had happened and said that her vaginal area had become painful. Her mother took her to a physician, who discovered that the victim had a vaginal injury consistent with digital penetration. The state charged the [petitioner] with two counts of risk of injury to a child and two counts of sexual assault in the first degree. After a trial, the jury returned a verdict of guilty on all counts. The court also found the [petitioner] in violation of his probation, which had been imposed for a prior conviction of possession of narcotics. The court sentenced the [petitioner] to a total effective term of forty-four years incarceration, execution suspended after twenty-four years, followed by ten years probation and lifetime sex offender registration." Id., 289. The petitioner appealed from the judgment of conviction, and this court affirmed the judgment of the trial court. The petition for certification to appeal from our affirmance was denied by our Supreme Court, and a petition for certification to appeal to the Supreme Court of the United States also was denied.

On October 16, 2009, the petitioner filed an amended petition for a writ of habeas corpus claiming that his criminal trial attorney had rendered ineffective assistance of counsel. The habeas court denied the petition following a trial, finding that counsel's "assistance was reasonable considering all the circumstances; he investigated the case, prepared for trial and employed reasonable trial strategies." Thereafter, the court granted the petition for certification to appeal. This appeal followed.

The petitioner claims that his "constitutional right to the effective assistance of counsel, under the [s]ixth and [f]ourteenth [a]mendments to the United States

[c]onstitution, was violated by his counsel's failure to adequately cross-examine, impeach, and otherwise challenge the testimony of [1] the complainant, [2] Lisa Murphy-Cipolla, [the clinical child interview supervisor at Saint Francis Hospital and Medical Center in Hartford, who conducted the forensic interview of the victim] and [3] Wendy Witt, M.D. [the emergency room physician who examined the victim at Lawrence and Memorial Hospital in New London]. Counsel also failed to present the testimony of a forensic psychologist (or other similar expert) with an expertise in investigating and assessing child sexual abuse allegations." We are not persuaded.

"As enunciated in *Strickland* v. *Washington*, [466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984)] . . . [a] claim of ineffective assistance of counsel consists of two components: a performance prong and a prejudice prong. To satisfy the performance prong . . . the petitioner must demonstrate that his attorney's representation was not reasonably competent or within the range of competence displayed by lawyers with ordinary training and skill in the criminal law. . . . To satisfy the prejudice prong, a claimant must demonstrate that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. . . . A court can find against a petitioner, with respect to a claim of ineffective assistance of counsel, on either the performance prong or the prejudice prong, whichever is easier." (Citation omitted; internal quotation marks omitted.) *Ham* v. *Commissioner of Correction*, 301 Conn. 697, 703–704, 23 A.3d 682 (2011).

I

The petitioner claims that counsel provided ineffective assistance by inadequately cross-examining, impeaching, and otherwise challenging the testimony of the victim, Murphy-Cipolla, and Witt. He argues that the victim provided some inconsistent information about exactly what had occurred and that counsel failed to confront her inconsistencies, that counsel failed to confront Murphy-Cipolla regarding her handling of the inconsistencies during the victim's interview, that counsel failed to confront Murphy-Cipolla regarding her failure to follow her own protocol, and that counsel failed to confront Witt as to her interpretation of the medical evidence, which, in the petitioner's view, could have provided evidence that might have exonerated him. We are not persuaded.

"A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that

counsel's conduct falls within the wide range of reasonable professional assistance; that is, the [petitioner] must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy. . . . [C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." (Internal quotation marks omitted.) *Toccaline* v. *Commissioner of Correction*, 80 Conn. App. 792, 798–99, 837 A.2d 849, cert. denied, 268 Conn. 907, 845 A.2d 413, cert. denied sub nom. *Toccaline* v. *Lantz*, 543 U.S. 854, 125 S. Ct. 301, 160 L. Ed. 2d 90 (2004).

After carefully reviewing the record, we agree with the habeas court's conclusion that the petitioner failed to demonstrate that trial counsel's questioning of the victim, Murphy-Cipolla, or Witt constituted deficient performance. Our review of the trial transcripts, which were provided as an exhibit at the habeas trial, does not reveal any inconsistent testimony on the part of the victim during the criminal trial, nor does the petitioner point to any such inconsistencies during that trial. The alleged inconsistencies occurred during Murphy-Cipolla's interview of the victim.[1] During the habeas trial, however, trial counsel explained that during cross-examination of the victim at the petitioner's criminal trial, he did not want to engage her regarding the specifics of the sexual assault because he believed it would not have been looked upon favorably by the jury, and he did not want to open the door to the videotape of the forensic interview being shown to the jury because it showed an eight year old girl explaining that her father had abused her sexually.[2] Counsel explained: "I didn't want that interview in front of the jury. I don't think this child came off in a way that would do anything other than harm our case." He also testified that the reason he did not engage Murphy-Cipolla about possible inconsistent statements by the victim during Murphy-Cipolla's interview of her was because the victim already had testified at the petitioner's criminal trial and he believed that Murphy-Cipolla could explain away the inconsistencies, possibly testify as to why the inconsistencies may have occurred, and that then the jury may have viewed her as an expert in this area. He especially did not want to do this when there was physical evidence to support the victim's allegations. As to the petitioner's claim that trial counsel was deficient for not confronting Murphy-Cipolla about her failure to follow her own protocols, at the petitioner's habeas trial, Murphy-Cipolla testified that protocols only serve as guidelines to be used during an interview, that every child is different, and that investigators must use professional judgment.

As to the petitioner's allegation that trial counsel failed to cross-examine Witt adequately regarding medical evidence that could have been used to exonerate

him, he has not directed us to any evidence that was introduced during his habeas trial that was not introduced during the criminal trial. Furthermore, the petitioner's criminal trial attorney explained that he tried to keep the testimony of these witnesses focused because he did not want to do anything that could open the door to questions about the petitioner's prior conduct in light of previous allegations of sexual assault made by another of his daughters ten years earlier.

"An attorney's line of questioning on examination of a witness clearly is tactical in nature. [As such, this] court will not, in hindsight, second-guess counsel's trial strategy." (Internal quotation marks omitted.) *Velasco* v. *Commissioner of Correction*, 119 Conn. App. 164, 172, 987 A.2d 1031, cert. denied, 297 Conn. 901, 994 A.2d 1289 (2010). Accordingly, although the petitioner may be discontented with trial counsel's tactics, we conclude that he has failed to overcome the presumption that trial counsel's cross-examination of these witnesses represented a sound trial strategy.

## II

The petitioner also claims that counsel provided ineffective assistance by failing to present the testimony of a forensic psychologist or psychiatrist with expertise in investigating and assessing child sexual abuse allegations. He argues: "It was objectively unreasonable for counsel to have failed to present [this] testimony . . . to show the inadequacies of the prosecuting authority's investigation, and to show a highly plausible alternative innocent explanation for the allegations that the prosecuting authority failed to consider, investigate, and rule out." We conclude, as did the habeas court, that the petitioner has failed to demonstrate that counsel's performance was deficient.

"We begin by noting that there is no per se rule that requires a trial attorney to seek out an expert witness. *Thompson* v. *Commissioner of Correction*, 131 Conn. App. 671, 696, 27 A.3d 86, cert. denied, 303 Conn. 902, 31 A.3d 1177 (2011). In *Peruccio* v. *Commissioner of Correction*, 107 Conn. App. 66, 943 A.2d 1148, cert. denied, 287 Conn. 920, 951 A.2d 569 (2008), however, this court noted that in some cases, 'the failure to use any expert can result in a determination that a criminal defendant was denied the effective assistance of counsel.' Id., 76. To support this proposition, this court, in dicta, cited to other Connecticut cases and to the conclusion in *Lindstadt* v. *Keane*, 239 F.3d 191 (2d Cir. 2001), that 'failure to consult [an] expert on sexual abuse of children constituted inadequate assistance.' *Peruccio* v. *Commissioner of Correction*, supra, 76." *Stephen S.* v. *Commissioner of Correction*, 134 Conn. App. 801, 811, 40 A.3d 796, cert. denied, 304 Conn. 932, 43 A.3d 660 (2012).

In *Stephen S.*, after analyzing relevant case law, we

concluded that "cases involving child sexual abuse may, depending on the circumstances, require some pretrial investigation and consultation with expert witnesses." Id., 815. This can be true of both medical experts and psychological experts. Id., 815, 817. Where trial counsel has consulted with such experts, however, but made the tactical decision not to produce them at trial, such decisions properly may be considered strategic choices. "Furthermore, trial counsel is entitled to make strategic choices in preparation for trial. See *Johnson* v. *Commissioner of Correction*, 222 Conn. 87, 96, 608 A.2d 667 (1992), quoting *Strickland* v. *Washington*, supra, 466 U.S. 690, 689 ('strategic choices made after thorough investigation of [the] law and facts relevant to plausible options are virtually unchallengeable' and '[t]he [petitioner] must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy' . . . ." *Stephen S.* v. *Commissioner of Correction*, supra, 134 Conn. App. 817–18.

The petitioner contends that trial counsel was deficient for failing to present the testimony of a forensic psychologist or psychiatrist in this case. During his habeas trial, he presented as his sole expert, David Mantell, a licensed clinical psychologist, who challenged Murphy-Cipolla's interview techniques as incomplete and biased. Mantell, however, did not offer any evidence or expert opinion to challenge her substantive findings, or otherwise to explain how the alleged deficient interview techniques led Murphy-Cipolla to any incorrect conclusions. The petitioner's trial attorney, moreover, testified at the habeas trial that during the criminal trial he reviewed the state's file, the records of the Department of Children and Families, the forensic interview, medical reports from the hospital, including from Witt, the diagnostic interview report, the intake narrative, police reports, statements, the videotape of the victim's interview, and the photographic evidence. Our review of the transcript of the habeas trial reveals that trial counsel was not asked why he did not have a forensic psychologist or psychiatrist testify on the petitioner's behalf. He was asked only whether he had asked such a person to review the videotape of the victim's forensic interview with Murphy-Cipolla. Although trial counsel testified that he did not recall having a forensic psychologist review the videotape of the victim's forensic interview, he explained that he had considerable training in the area of sexual assault, having attended many seminars and training sessions, and having read books and numerous journal articles. He also explained that he has doctors whom he retains in these matters to go over what is, and what is not, problematic. He further testified that he reviewed the photographs of the victim's culpascope examination[3] early in the case because he had "people [he could] consult with on these things discreetly to understand

what the imaging is, the technology behind it, and what [he was] looking at, and what [he] should be careful about" and that he did discuss this with professionals. He testified that he consulted a pediatrician, a gynecologist and a radiologist. He also explained that he did not have a forensic psychologist or psychiatrist review the videotape in this case because the interview occurred two weeks after the initial disclosure, and he believed that it was the initial disclosure that was important in this case. He testified that what occurred during the interview with Murphy-Cipolla "didn't motivate what [the victim] said to Dr. Witt on the date of that exam. That is why [he did not have it reviewed]. It would not have provided [him] more evidence." The petitioner has not pointed us to any additional evidence that could have been presented by a forensic psychologist or psychiatrist in his criminal trial that would have buttressed his defense, and any such expert would have been subject to cross-examination by the prosecution.

In this case, the petitioner has not demonstrated that trial counsel's decisions were anything other than sound trial strategy. We conclude, therefore, as did the habeas court, that the petitioner has failed to demonstrate that counsel's performance was deficient.

### III

In addition to finding that counsel's performance was not deficient, the habeas court concluded that the petitioner failed to prove that he was prejudiced by any alleged deficiency. Consistent with the decision of the habeas court, we conclude that even if we were to agree with one or more of the petitioner's allegations of deficient performance, he, nonetheless, has failed to prove prejudice.

In this case, during the petitioner's criminal trial, there was evidence that the petitioner's eight year old daughter told her mother that the petitioner had hurt her by digitally penetrating her vagina twice when she was staying at the home of the petitioner, who, at that time, was residing with one of his older daughters (the victim's sister) and her children, at least one of whom was approximately the same age as the victim. The victim's mother also testified that she had experienced no visitation or custody issues with the petitioner and that the victim "was crazy for her dad" before the sexual assault. The victim reiterated her sexual abuse allegations to an emergency room physician (Witt), a social worker from the Department of Children and Families (Awilda Melendez), and a forensic interviewer (Murphy-Cipolla), all of whom testified at the petitioner's criminal trial, and all of whom, as constancy of accusation witnesses, corroborated the victim's statements, giving essentially the same details of the sexual abuse. Additionally, there was medical evidence, consistent with digital penetration, that was introduced at the petitioner's criminal trial.

After reviewing the record from the habeas trial, we conclude that the petitioner failed to demonstrate with a reasonable probability that the testimony of a forensic psychologist or psychiatrist, or that additional cross-examination of the victim, Murphy-Cipolla or Witt likely would have resulted in a different outcome at his criminal trial.

The judgment is affirmed.

In this opinion the other judges concurred.

* In accordance with our policy of protecting the privacy interests of the victims of sexual abuse and the crime of risk of injury to a child, we decline to use the petitioner's full name or to identify the victim or others through whom the victim's identity may be ascertained. See General Statutes § 54-86e.

[1] The petitioner also contends in his appellate briefs that there was a retraction by the victim near the end of this videotaped interview. He sets forth the following in his main appellate brief: "Later in the interview, the [victim] said either 'he never touched me or he never touch'ed.' Murphy-Cipolla thought that the [victim] said that the petitioner 'never touch'ed,' but acknowledged she could be wrong. The [victim] might have said that the petitioner 'never touched her.' " (Footnote omitted.) In his reply brief, he contends: "At the end of the forensic interview, the [victim] *retracted* the allegations altogether . . . ." (Emphasis in original.) During oral argument before this court, the petitioner's appellate attorney forcefully emphasized the alleged significance of this alleged retraction or recantation by the victim during the interview. When pointedly asked by Judge Keller during rebuttal argument whether Murphy-Cipolla testified that the victim had recanted at the end of the interview, the petitioner's appellate attorney clearly answered: "Yes."

A full review of the habeas trial transcript, however, reveals that during cross-examination by the petitioner's attorney, Murphy-Cipolla testified, after a portion of the videotape was played twice to refresh her recollection, that *she was not sure* what the victim, whom she described as "a Spanish-speaking child," was saying on that specific portion of the tape, but that it sounded like "he never touch'ed." She admitted that she did not follow up on that statement during the interview.

Although the videotape of the forensic interview was marked only as an exhibit for identification at the habeas trial; see *Daigle* v. *Metropolitan Property & Casualty Ins. Co.*, 257 Conn. 359, 364, 777 A.2d 681 (2001) ("[t]he purpose of marking an exhibit for identification is to preserve it as part of the record" [internal quotation marks omitted]); we have reviewed the relevant portion of the videotape only for the context of the alleged recantation, which we discern as follows:

"[Murphy-Cipolla]: Do you have any worries about your dad touching some other kid like this?"

"[The Victim]: Yeah.

"[Murphy-Cipolla]: Tell me about that.

"[The Victim]: He never touch'ed—but I think he touched my cousin."

[2] There is no claim that trial counsel was ineffective for not offering this videotaped interview into evidence.

[3] Dr. Witt explained at the petitioner's criminal trial that a culpascope "is a magnification machine that's . . . attached to a video camera, and it allows better lighting and higher magnification so you can see areas that are not well lit and areas that light show injury that you wouldn't see well with the naked eye." Witt used the culpascope to examine the victim's genital area.