******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

OREMA TAFT *v.* COMMISSIONER
OF CORRECTION
(AC 36118)

Lavine, Prescott and Elgo, Js.

*Argued May 12—officially released September 8, 2015*

(Appeal from Superior Court, judicial district of
Tolland, Kwak, J.)

*Mark M. Rembish*, assigned counsel, for the appellant (petitioner).

*Linda Currie-Zeffiro*, senior assistant state's attorney, with whom, on the brief, was *John C. Smriga*, state's attorney, for the appellee (respondent).

*Opinion*

PRESCOTT, J. The petitioner, Orema Taft, appeals following the denial of his petition for certification to appeal from the judgment of the habeas court denying his amended petition for a writ of habeas corpus. On appeal, the petitioner claims that the court abused its discretion by denying his petition for certification to appeal, and improperly rejected his claims that his trial counsel provided ineffective assistance in three ways: (1) failing to adequately investigate the state's offer of a reward and the prior testimony of witnesses at the trial of his codefendant; (2) failing to cross-examine witnesses about a witness' recantation of a prior statement inculpating the petitioner, and about the state's offer of a reward; and (3) allegedly conceding during closing arguments that the petitioner was involved in the crime.[1] We agree with the petitioner that his claim that his trial counsel rendered deficient performance by failing to conduct an adequate investigation and by relying solely on the opinion of an attorney representing a codefendant regarding the significance, or lack of significance, of evidence admitted at the trial of the codefendant, raises an issue that is debatable amongst jurists of reason. Nevertheless, on the basis of the record, we conclude that the habeas court did not abuse its discretion by denying the petition for certification to appeal with respect to this claim because the petitioner failed to demonstrate that a debatable issue concerning prejudice exists. As to the remainder of the petitioner's claims, we also conclude that that habeas court did not abuse its discretion by denying certification to appeal. Accordingly, we dismiss the appeal.

The following procedural history and facts, as found by the habeas court and as stated by our Supreme Court in *State* v. *Taft*, 306 Conn. 749, 51 A.3d 988 (2012), are relevant to this appeal. "On September 28, 2001, shortly before 3 a.m., the victim, Zoltan Kiss, was shot and killed in his car in the area of 1185 Pembroke Street in Bridgeport. Just prior to the shooting, the victim parked his car across from 1185 Pembroke Street, exited the vehicle, approached some individuals on the street to seek change for a $100 bill and, thereafter, approached a gate leading to an alley next to 1185 Pembroke Street (gate). Shortly thereafter, a group of people, including the [petitioner], exited from behind the gate and followed the victim as he returned to his car. When the victim reached his car, at least one of the pursuers, Miguel Zapata, began firing a handgun at the victim. Additionally, before the gunfire, one witness heard someone in the group say, 'Let's get this mother fucker.' " (Footnote omitted.) Id., 751–52.

Both Zapata and the petitioner were eventually arrested and charged with the victim's murder. Zapata and the petitioner were tried separately, with Zapata's trial occurring prior to the petitioner's trial. Zapata was

represented by Attorney Frank O'Reilly during his criminal trial. The prosecutor for both criminal trials was C. Robert Satti, Jr. During the petitioner's trial, the state offered the testimony of five witnesses,[2] in addition to that of the police officers and detectives. "[T]wo witnesses, A and B, testified that they had seen the [petitioner] in the area behind the gate with a number of other individuals [prior to the shooting]. A and B also testified that they had seen guns behind the gate where the [petitioner] and his companions were located. Both A and B recounted that they had seen the victim park his car across the street from the gate and approach the gate. A testified that she had seen the victim interact with someone behind the gate and then begin to return to his car. Shortly thereafter, A saw the group behind the gate chase after the victim, and A further recounted that she had seen both Zapata and the [petitioner] carrying guns as they pursued the victim to his car. B also testified that she had heard someone say, 'Let's get this mother fucker' before gunfire erupted. Both A and B then testified that they had heard shouting and gunfire, and had seen the muzzle flashes as the guns were fired at the victim.

"The state then presented the testimony of another witness, C, who, at the time of the shooting lived in a third floor apartment of a nearby building. C stated that, at approximately 2 or 3 a.m., on September 28, 2001, she had heard gunfire coming from the street located in front of her apartment. When she went to investigate the noise, C saw four people—the [petitioner], Zapata, Luisa Bermudez and A—standing in front of the door of a car on the street. C further recounted that she had seen the muzzle flashes as the guns were fired at the victim, and she had heard the victim screaming. She also stated that, from her perspective, she could only see Zapata holding a gun and that, after the shooting stopped, the group ran from the scene." (Footnotes omitted.) Id., 753–54.

In addition to the testimony of A, B, and C, "the state presented testimony from several individuals who had had contact with the [petitioner] while the charges in the present case were pending. First, D testified that he was incarcerated in the same prison as the [petitioner], and that the [petitioner] had told him that he and Zapata had shot a 'dude' in a Honda seven times with a .45 caliber gun. D then recounted that the [petitioner] had told him that he and Zapata had chased after the victim because they wanted to take the victim's jewelry. Then, the state presented the testimony of [Germaine O'Grinc],[3] who testified that, during one of his court appearances in connection with a felony charge, he was in the 'bullpen lockup' of the courthouse with the [petitioner] and Zapata. [O'Grinc] recounted that Zapata had told him that he was in court because he and the [petitioner] had shot a person in his car. [O'Grinc] further testified that the [petitioner] had confirmed or

'vouched for' Zapata's statements and had nodded in agreement while Zapata was talking to [O'Grinc]." (Footnote added.) Id., 755.

On September 19, 2007, following a jury trial, the petitioner was convicted of one count of murder in violation of General Statutes § 53a-54a (a) and one count of conspiracy to commit murder in violation of General Statutes §§ 53a-48 (a) and 53a-54a (a). The trial court sentenced him to a total effective term of forty-five years incarceration. At all relevant times during the criminal trial court proceedings, the petitioner was represented by Attorney Erroll Skyers.

The petitioner filed a direct appeal from the judgment of conviction, raising, among other things, a claim of ineffective assistance of counsel resulting from his trial counsel's failure to cross-examine witnesses about the reward and his failure to cross-examine a witness about a prior recantation of a statement inculpating the petitioner. Id., 767–69. Our Supreme Court declined, however, to address the merits of the petitioner's ineffective assistance of counsel claim. Id., 769.

On July 8, 2010, the petitioner filed a petition for a writ of habeas corpus, asserting that he was denied his right to effective assistance of counsel. He amended his petition twice, with the second amended petition being filed on December 10, 2012. Following a habeas trial, the court issued its memorandum of decision on August 27, 2013, denying the petition in its entirety, and finding that the petitioner had failed to prove that he was denied effective assistance of counsel under the two-pronged test set forth in *Strickland* v. *Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). On August 30, 2013, the petitioner filed a petition for certification to appeal, which the habeas court denied on September 6, 2013. This appeal followed. Additional facts relevant to the petitioner's appeal will be set forth as necessary.

We begin by setting forth the standard of review that guides our resolution of the petitioner's appeal. "In *Simms* v. *Warden*, 229 Conn. 178, 187, 640 A.2d 601 (1994), [our Supreme Court] concluded that . . . [General Statutes] § 52-470 (b) prevents a reviewing court from hearing the merits of a habeas appeal following the denial of certification to appeal unless the petitioner establishes that the denial of certification constituted an abuse of discretion by the habeas court. In *Simms* v. *Warden*, 230 Conn. 608, 615–16, 646 A.2d 126 (1994), [our Supreme Court] incorporated the factors adopted by the United States Supreme Court in *Lozada* v. *Deeds*, 498 U.S. 430, 431–32, 111 S. Ct. 860, 112 L. Ed. 2d 956 (1991), as the appropriate standard for determining whether the habeas court abused its discretion in denying certification to appeal. This standard requires the petitioner to demonstrate that the issues are debatable among jurists of reason; that a court *could* resolve the

issues [in a different manner]; or that the questions are adequate to deserve encouragement to proceed further. . . . A petitioner who establishes an abuse of discretion through one of the factors listed above must then demonstrate that the judgment of the habeas court should be reversed on its merits. . . . In determining whether the habeas court abused its discretion in denying the petitioner's request for certification, we necessarily must consider the merits of the petitioner's underlying claims to determine whether the habeas court reasonably determined that the petitioner's appeal was frivolous." (Emphasis in original; internal quotation marks omitted.) *Tutson* v. *Commissioner of Correction*, 144 Conn. App. 203, 214–15, 72 A.3d 1162, cert. denied, 310 Conn. 928, 78 A.3d 145 (2013).

## I

To decide if the habeas court abused its discretion by denying certification to appeal, we must look to the merits of the underlying claim of ineffective assistance of counsel. "[I]t is well established that [a] criminal defendant is constitutionally entitled to adequate and effective assistance of counsel at all critical stages of criminal proceedings. *Strickland* v. *Washington*, [supra, 466 U.S. 686]. This right arises under the sixth and fourteenth amendments to the United States constitution and article first, § 8, of the Connecticut constitution. . . . As enunciated in [*Strickland*], this court has stated: It is axiomatic that the right to counsel is the right to the effective assistance of counsel." (Internal quotation marks omitted.) *Gaines* v. *Commissioner of Correction*, 306 Conn. 664, 677–78, 51 A.3d 948 (2012).

To establish ineffective assistance of counsel under the *Strickland* standard, "the claim must be supported by evidence establishing that (1) counsel's representation fell below an objective standard of reasonableness, and (2) counsel's deficient performance prejudiced the defense because there was a reasonable probability that the outcome of the proceedings would have been different had it not been for the deficient performance. . . . Because both prongs of *Strickland* must be demonstrated for the petitioner to prevail, failure to prove either prong is fatal to an ineffective assistance claim." (Citations omitted; internal quotation marks omitted.) *Hall* v. *Commissioner of Correction*, 152 Conn. App. 601, 608, 99 A.3d 1200, cert. denied, 314 Conn. 950, 103 A.3d 979 (2014).

## A

The petitioner first claims that the habeas court improperly denied his claim of ineffective assistance of counsel because Skyers failed to adequately investigate the facts of his case. Specifically, the petitioner asserts that Skyers failed to investigate or discover (1) the state's offer of a reward; (2) the testimony of witnesses at Zapata's trial concerning the reward offered by the

state; and (3) O'Grinc's testimony at Zapata's trial, during which O'Grinc recanted a statement inculpating the petitioner that he previously made to the police. Underlying all three assertions is the petitioner's predicate claim that it is deficient performance for an attorney to rely solely on the representations of a codefendant's counsel to decide the scope of an appropriate investigation into his client's case.

The following additional facts are relevant to this claim. Prior to the petitioner's arrest, due to the stalled nature of the investigation of the victim's murder, the governor signed an offer of a $50,000 reward for information leading to the "arrest and conviction" of the guilty parties. A, B, and C knew about the reward and each received a portion of the reward money after the petitioner's conviction. All three witnesses testified at Zapata's trial, which occurred prior to the petitioner's trial, and O'Reilly cross-examined all three witnesses about the reward. O'Reilly also cross-examined O'Grinc about a statement inculpating the petitioner and Zapata, which O'Grinc had previously made to the police. On cross-examination, at Zapata's trial, O'Grinc recanted his prior statement inculpating the petitioner. *State* v. *Zapata*, 119 Conn. App. 660, 667–68, 989 A.2d 626, cert. denied, 296 Conn. 906, 992 A.2d 1136 (2010).

In preparation for the petitioner's trial, Skyers did not attend Zapata's trial. Instead, Skyers spoke to O'Reilly about what had occurred at Zapata's trial and discussed with him who the important witnesses were. Relying on O'Reilly's representations, Skyers did not order all of the transcripts from Zapata's trial, including any portion of O'Grinc's testimony. Skyers did request and read the trial transcripts of the testimony of A, B, and C. At the petitioner's criminal trial, Skyers did not cross-examine any of the witnesses about the reward and did not confront O'Grinc about his recantation. O'Grinc testified against the petitioner in accordance with his prior statement inculpating the petitioner by stating that while in lockup with the petitioner and Zapata, Zapata admitted to his and the petitioner's involvement in the murder, and the petitioner nodded in agreement.

The habeas court found that Skyers "was aware of and investigated the reward. He spoke with [O'Reilly] and reviewed relevant portions of the codefendant's criminal trial transcripts. After these efforts, [Skyers] made an informed tactical decision to not pursue a line of questioning that had already proved to be unfruitful in [Zapata's] trial." The habeas court, however, did not make a specific finding regarding precisely when Skyers became aware of the reward.[4]

Inadequate pretrial investigation can amount to deficient performance, satisfying prong one of *Strickland*, as "[c]onstitutionally adequate assistance of counsel includes competent pretrial investigation." *Siemon* v. *Stoughton*, 184 Conn. 547, 554, 440 A.2d 210 (1981).

Although we acknowledge that "counsel need not track down each and every lead or personally investigate every evidentiary possibility before choosing a defense and developing it"; (internal quotation marks omitted) *Gaines* v. *Commissioner of Correction*, supra, 306 Conn. 683; "[e]ffective assistance of counsel imposes an obligation [on] the attorney to investigate all surrounding circumstances of the case and to explore all avenues that may potentially lead to facts relevant to the defense of the case." (Internal quotation marks omitted.) Id., 680. "In other words, counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." (Internal quotation marks omitted.) Id.

If counsel makes strategic decisions after thorough investigation, those decisions "are virtually unchallengeable . . . ." (Internal quotation marks omitted.) Id.. In particular, "our habeas corpus jurisprudence reveals several scenarios in which courts will not second-guess defense counsel's decision not to investigate or call certain witnesses or to investigate potential defenses, such as when: (1) counsel learns of the substance of the witness' testimony and determines that calling that witness is unnecessary or potentially harmful to the case; (2) the defendant provides some information, but omits any reference to a specific individual who is later determined to have exculpatory evidence such that counsel could not reasonably have been expected to have discovered that witness without having received further information from his client; or (3) the petitioner fails to present, at the habeas hearing, evidence or the testimony of witnesses that he argues counsel reasonably should have discovered during the pretrial investigation." (Footnotes omitted.) Id., 681–82; see e.g., *Norton* v. *Commissioner of Correction*, 132 Conn. App. 850, 859, 33 A.3d 819 (2012) ("[T]he petitioner has not presented us with any beneficial testimony from these witnesses that would demonstrate how they would have assisted in his case had trial counsel interviewed them. He makes only the bare allegation," which is not sufficient to show prejudice.), cert. denied, 303 Conn. 936, 36 A.3d 695 (2012).

Not every failure to investigate, however, can be dismissed as trial strategy. Here, the petitioner's claim of inadequate investigation is premised on the underlying assertion that Skyers relied solely on the representations of O'Reilly when investigating what occurred at Zapata's trial and deciding what evidence from Zapata's trial was important to the petitioner's case.

We agree for the following reasons that, under the circumstances of this case, Skyer's sole reliance on the representations and opinions of O'Reilly regarding what evidence from Zapata's trial would be important for the defense of the petitioner raises a meritorious claim of deficient performance.[5] First, O'Reilly would not have

been privy to privileged conversations between Skyers and the petitioner. Knowledge of those communications would be significant in order to analyze the relative importance of the evidence and testimony presented at Zapata's trial. Moreover, O'Reilly had no duty of loyalty to the petitioner to exercise care and appropriate professional judgment in assessing the importance to the petitioner of the evidence in Zapata's trial. Indeed, in these circumstances, it may well be that because Zapata already had been convicted at his trial, Zapata might have had personal interests that significantly diverged from the interests of the petitioner. Simply put, the petitioner is entitled to counsel who has not abdicated to another his or her duty to make an informed and independent assessment of the importance of evidence to the client's case.[6]

Our conclusion is supported by *Rios* v. *Rocha*, 299 F.3d 796 (9th Cir. 2002). In *Rios*, the United States Court of Appeals for the Ninth Circuit held that the trial attorney failed to adequately investigate the defendant's case because he relied solely on the investigation reports and trial materials prepared by the attorney for the codefendant.[7] Id., 807. The trial attorney relied solely on the investigative efforts of the codefendant's attorney in locating and interviewing the witnesses; he personally interviewed only one of the fifteen witnesses. Id., 806. In reversing the District Court's conclusion that the investigation was constitutionally adequate, the United States Court of Appeals for the Ninth Circuit held that it is "unreasonable for [an attorney] to rely solely on the investigation performed for a co-defendant, because the co-defendant's interests in the case might well conflict with [the defendant's] own. [The codefendant's attorney] testified, for example, that he was looking for information to exculpate [the codefendant], not [the defendant]." Id., 808. In other words, reliance on the investigation of a codefendant's attorney is not a substitute for proper investigation. Thus, in *Rios*, it was deficient performance for the trial attorney not to conduct further investigation before deciding to "abandon a potentially meritorious defense . . . ." Id.

In a related context, federal appeals courts have also concluded that it is deficient performance for a defendant's counsel to rely solely on a prosecutor's investigation into the facts. For example, in *Alcala* v. *Woodford*, 334 F.3d 862, 891–92 (9th Cir. 2003), the United States Court of Appeals for the Ninth Circuit held that there is deficient performance if trial counsel relies solely on the investigation of the prosecution, stating that "trial counsel's reliance on the prosecution's investigation is no more reasonable than the reliance on a co-defendant's investigation in *Rios*." The United States Court of Appeals for the Eleventh Circuit similarly has held that it is deficient performance for trial counsel to rely solely on the prosecutor's investigations, as trial counsel "could not have made an informed tactical decision"

to refrain from calling a medical expert witness. *Holsomback* v. *White*, 133 F.3d 1382, 1387–88 (11th Cir. 1998) ("[I]t appears from the record that counsel preferred simply to rely on the prosecutor's references to the lack of physical evidence as the sole source of information on the subject. . . . Having conducted no investigation into the significance of the lack of medical evidence that [the victim] had been sexually abused, however, [the defendant's] counsel could not have made an informed tactical decision . . . . In these circumstances, we cannot say that counsel's decision not even to contact the physicians as part of his pre-trial investigation was professionally reasonable." [Citation omitted; internal quotation marks omitted.]).

Although there are no Connecticut cases on point, the decisions of the Ninth and Eleventh Circuits are instructive in defining what it means for an attorney to conduct an investigation so as to be able to make an informed strategic decision.[8] Reliance solely on a codefendant's attorney is not enough.[9]

For similar reasons, courts have held, or at least intimated, that counsel also has a duty to request and review the trial transcripts from a codefendant's separate trial that occurred prior to the defendant's trial.[10] Both the United States Courts of Appeal for the Fifth and the Eighth Circuits have held that defense counsel's failure to review the codefendant's trial transcripts constitutes deficient performance. See *Owens* v. *Dormire*, 198 F.3d 679, 682 (8th Cir. 1999) ("[w]e concede that trial counsel's failure to read a co-defendant's trial transcripts may constitute deficient performance under *Strickland*"), cert. denied, 530 U.S. 1265, 120 S. Ct. 2725, 147 L. Ed. 2d 988 (2000); *Westley* v. *Johnson*, 83 F.3d 714, 721 (5th Cir. 1996) ("We are persuaded that counsel was deficient in not at least reviewing the transcripts of [the codefendant's] trial. A reasonable counsel would have reviewed the testimony of [a witness from the codefendant's trial] . . . who would eventually testify against [counsel's] client."), cert. denied, 519 U.S. 1094, 117 S. Ct. 773, 136 L. Ed. 2d 718 (1997). Specifically, the Fifth Circuit has held that it is constitutionally deficient performance not to order and review the testimony of a witness from the codefendant's trial if that witness will later testify at the petitioner's criminal trial. *Westley* v. *Johnson*, supra, 721.

We do not mean to suggest that defense counsel's failure to read the entire transcript of the trial of a codefendant will always constitute deficient performance.[11] In this case, however, Skyers' decision as to the need or importance of conducting that review or additional investigation was based solely upon O'Reilly's representations and judgment, which, for the reasons we have stated, should not have been relied upon as the sole basis on which to make that decision. This is particularly true considering the fact that Skyers did

not order or review any of O'Grinc's testimony from Zapata's trial, even though Skyers knew that O'Grinc would also testify against the petitioner at the petitioner's trial. Accordingly, we conclude that the petitioner's claim regarding Skyers' deficient performance as it relates to his allegedly inadequate investigation of the petitioner's case is debatable amongst jurists of reason.

B

Having concluded that the petitioner raised a meritorious claim that Skyers' investigation of the petitioner's case was constitutionally inadequate, we turn to the question of whether the petitioner was prejudiced by this potentially deficient performance. We conclude that the court properly found that the petitioner failed to demonstrate any prejudice by any lack of a proper investigation, and, thus, it did not abuse its discretion by denying the petition for certification to appeal as to this claim.

To prove prejudice, a petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland* v. *Washington*, supra, 466 U.S. 694. "In a habeas corpus proceeding, the petitioner's burden of proving that a fundamental unfairness had been done is not met by speculation . . . but by demonstrable realities." (Internal quotation marks omitted.) *Crawford* v. *Commissioner of Correction*, 285 Conn. 585, 599, 940 A.2d 789 (2008). To meet this standard, the petitioner must offer evidence of what benefit the additional investigation—reading the entire transcript of the codefendant's trial—would have provided and how that would have changed the jury's verdict. See *Nguyen* v. *Archuleta*, 369 Fed. Appx. 889, 894 (10th Cir. 2010) ("[the petitioner] does not indicate that there actually were inconsistent statements given or that his counsel could have impeached the witnesses who testified at his trial [if he had read the transcript]"); *United States* v. *Dung Vu*, 215 Fed. Appx. 9, 12 (1st Cir.) (requiring petitioner to both identify beneficial sections of transcript not reviewed and to show that additional benefit provided by transcript is more than minor), cert. denied, 552 U.S. 828, 128 S. Ct. 45, 169 L. Ed. 2d 42 (2007); *Westley* v. *Johnson*, supra, 83 F.3d 721–22 (finding no prejudice because there was only proof of minimal additional benefit from full use of transcript). As discussed previously in this opinion, to prove that the habeas court abused its discretion by denying certification to appeal this claim, the burden is on the petitioner to establish that it is at least debatable among jurists of reason that prejudice exists.

The petitioner offered no evidence at the habeas trial as to what Skyers would have discovered if he had read the entire transcript of Zapata's trial. The petitioner did

not provide the habeas court with those trial transcripts. Furthermore, the petitioner also did not offer evidence regarding how O'Grinc or A, B and C would have testified if they had been cross-examined about the recantation or reward, respectively. Accordingly, we agree with the habeas court's conclusion that the petitioner was not prejudiced by the deficiencies in Skyer's investigation.

In addition, even if the petitioner had offered the witnesses' testimony or the Zapata transcripts as evidence, he did not establish how this evidence would tend to demonstrate that Skyers would have changed his defense strategy and chosen to cross-examine the witnesses about the reward and recantation. Indeed, the habeas court found that if the witnesses had been cross-examined about the reward, Satti would have been able to rehabilitate them on redirect examination with evidence damaging to the petitioner: "Further buttressing [Skyers'] tactical decision was the very reasonable concern of opening the door to additional [and harmful rehabilitation] questioning," namely, that A, B, and C would have testified to having other motives for testifying at the criminal trial other than the reward— C was motivated to testify by almost being killed in the past for being thought as a snitch in the present case; B was motivated to testify by fear as Zapata had tried to murder her in the courtroom during Zapata's trial; and A was motivated to testify by being arrested and forced to testify pursuant to a capias warrant. As for O'Grinc, Satti would have shown that the petitioner, Zapata, and O'Grinc had a prior history, including alleged participation in the same drug operation and a familial relationship between Zapata and O'Grinc. The habeas court found Satti and Skyers' testimony at the habeas trial credible as to the rehabilitation evidence being more harmful than the cross-examinations being beneficial.

We agree with the habeas court's conclusion that the petitioner failed to established that he was prejudiced by Skyers' deficient performance, as he did not offered any evidence of how the result of his trial would have been different if Skyers had reviewed the Zapata trial transcript in its entirety and had cross-examined the witnesses about the reward and recantation. See *Strickland* v. *Washington*, supra, 466 U.S. 694. The petitioner has failed to prove how any additional information, if it did exist, about the reward or recantation would have altered Skyers' defense strategy or impeachment strategy. The petitioner has provided no testimony from the witnesses as to what they would have said on cross-examination about the reward or the recantation. In sum, the petitioner has offered no evidence proving that a different cross-examination of O'Grinc or A, B, and C would have altered the jury's verdict.

Accordingly, the petitioner has failed to establish that

the issue of prejudice is debatable among jurists of reason, that a court could resolve the issue in a different manner, or that the issue is adequate to deserve encouragement to proceed further. We, therefore, conclude that the habeas court did not abuse its discretion by denying the petition for certification to appeal as to this claim.

II

The petitioner next claims that the habeas court improperly denied his claim that Skyers' failure to adequately cross-examine witnesses at the petitioner's criminal trial amounted to ineffective assistance of counsel. In support of this claim, the petitioner makes two arguments. First, the petitioner claims that Skyers should have impeached O'Grinc about his prior recantation. Second, the petitioner claims that Skyers should have impeached A, B, and C about their potential bias stemming from the reward offer. The respondent, the Commissioner of Correction, contends that Skyers made informed tactical decisions, which deserve deference, that these lines of impeachment would not be fertile. We agree with the respondent and, therefore, conclude that the habeas court did not abuse its discretion by denying the petition for certification to appeal as to this claim.

A claim of deficient cross-examination is a claim against an attorney's strategic and tactical decisions, and "[this] court will not, in hindsight, second-guess counsel's trial strategy." (Internal quotation marks omitted.) *Velasco* v. *Commissioner of Correction*, 119 Conn. App. 164, 172, 987 A.2d 1031, cert. denied, 297 Conn. 901, 994 A.2d 1289 (2010). Accordingly, when challenging a trial attorney's line of impeachment on cross-examination of a witness, the petitioner must "overcome the presumption that trial counsel's cross-examination of [the witness] represented a sound trial strategy." *Antonio A.* v. *Commissioner of Correction*, 148 Conn. App. 825, 832, 87 A.3d 600, cert. denied, 312 Conn. 901, 91 A.3d 907 (2014). Once an attorney makes an informed, strategic decision regarding how to cross-examine a witness, that decision is "virtually unchallengeable." *Strickland* v. *Washington*, supra, 466 U.S. 690. "As a general rule, a habeas petitioner will be able to demonstrate that trial counsel's decisions were objectively unreasonable only if there [was] no . . . tactical justification for the course taken." (Internal quotation marks omitted.) *Lynn* v. *Bliden*, 443 F.3d 238, 247 (2d Cir. 2006), cert. denied, 549 U.S. 1257, 127 S. Ct. 1383, 167 L. Ed. 2d 168 (2007).

As the habeas court made no findings as to if Skyers knew about the recantation when O'Grinc testified at the petitioner's trial, and the petitioner did not seek an articulation from the habeas court, we assume for the purposes of this claim that Skyers knew about the recantation at the time that O'Grinc testified at the

petitioner's trial. Assuming that Skyers knew of the recantation, Skyer offered a strategic, plausible reason for not utilizing that line of impeachment. On the basis of Skyers' testimony and other evidence, the habeas court found that it was a strategic decision not to cross-examine O'Grinc about the recantation; had Skyers cross-examined O'Grinc about the recantation, Satti would have been able to introduce harmful rehabilitation evidence, negating the benefit of the cross-examination. Thus, we must defer, as the habeas court did, to Skyers' informed, strategic decision.

We similarly must defer to Skyers' strategic decision not to cross-examine A, B, and C about the state's offer of a reward. The habeas court made no findings of fact as to when Skyers became aware of the reward, and the record is ambiguous. In light of this ambiguity, we assume for the purposes of this claim that Skyers knew of the reward at the petitioner's probable cause hearing, when he first could have cross-examined C about the reward. The habeas court found that the testimony of Satti and Skyers was credible that the rehabilitation evidence was more harmful than the potential benefit of the cross-examinations. Thus, Skyers made an informed, strategic decision not to cross-examine the witnesses about the reward.[12]

Accordingly, the petitioner has failed to demonstrate that this claim involves issues that are debatable among jurists of reason, that a court could resolve the issues in a different manner, or that the questions are adequate to deserve encouragement to proceed further. See *Simms* v. *Warden*, supra, 230 Conn. 616. We, therefore, conclude that the habeas court did not abuse its discretion in denying the petition for certification to appeal as to this claim.

## III

Lastly, the petitioner claims that the habeas court improperly denied his petition for certification to appeal with respect to his claim of ineffective assistance of counsel based on Skyers' closing argument. We agree with the respondent that the habeas court did not abuse its discretion in denying certification to appeal this claim.

The following additional facts are relevant to this claim. At the petitioner's criminal trial, in his closing, Skyers stated that "[i]t is not unreasonable that if something drastic occurs where you're not intimately involved, but you know the persons who are involved, and they run, you run, too." The petitioner objects to the use of the phrase "intimately involved," arguing that it concedes the petitioner's involvement in the crime. At the habeas trial, Skyers explained that by using the phrase "intimately involved," he did not intend to imply that the petitioner was involved in criminal activity; rather, he meant that "a person can be aware of people

around them that are doing something, and when he sees those persons run, and he knows who they are, then he runs as well. Without being involved in anything.''

We previously rejected a similar claim of ineffective assistance of counsel in *Haywood* v. *Commissioner of Correction*, 153 Conn. App. 651, 105 A.3d 238, cert. denied, 315 Conn. 908, 105 A.3d 235 (2014). In *Haywood*, the petitioner alleged that trial counsel's closing argument amounted to deficient performance under a claim of ineffective assistance of counsel because counsel had conceded that an attempted armed robbery had occurred. Id., 659. Although the petitioner claimed that this statement conceded his guilt, we concluded that it was consistent with counsel's defense strategy of showing that the petitioner, although present, was not a participant in the attempted robbery. Id., 659–60.

The same reasoning applies in the present case. The habeas court found Skyers' testimony credible and that Skyers' statement in closing argument was in line with his defense strategy, which included establishing that the petitioner was present at the scene of the crime, but that he did not participate in it. We agree with the habeas court that Skyers' closing argument did not fall below an objective standard of reasonableness. Thus, Skyers made an informed, strategic decision, and we must defer to it.

Accordingly, the petitioner has failed to establish that the issue of whether Skyers' closing argument constituted deficient performance under prong one of *Strickland* is debatable amongst jurists of reason, that a court could resolve the issue in a different manner, or that the question raised is adequate to deserve encouragement to proceed further. We, therefore, conclude that the petitioner has failed to demonstrate that the habeas court abused its discretion by denying the petition for certification to appeal as to this claim.

The appeal is dismissed.

In this opinion the other judges concurred.

[1] In appellate his brief, the petitioner set forth his claims in a different order; however, for the sake of clarity and efficiency, we have reordered the claims and arguments.

[2] The criminal court sealed the names of the witnesses, and, thus, they are referred to by initial in this opinion. *State* v. *Taft*, supra, 306 Conn. 753 n.7.

[3] O'Grinc's name is no longer sealed, but it was at the time of the direct appeal.

[4] At the habeas trial, Skyers could not recollect if he knew about the reward at the probable cause hearing. The habeas court made no specific finding regarding whether Skyers knew, at the time of the petitioner's criminal trial, that O'Grinc had recanted his statement to the police.

[5] Although Skyers testified regarding his usual practices in investigating a criminal case involving one of his clients, he did not state whether his investigation of this case was consistent with his general practices.

[6] Our decision by no means should be interpreted to prohibit defense counsel from speaking with a codefendant's counsel about the codefendant's case and from relying, in part, on the information provided by the codefendant's counsel. Discussing how the codefendant's case was tried, potential issues with the defense strategy, and the strengths and weaknesses of the

state's case are useful pieces of information that can inform and shape defense counsel's own defense strategy. Furthermore, there may be cases in which defense counsel's reliance on the assessments of a codefendant's counsel concerning the codefendant's case is reasonable if that reliance is confirmed by the well-informed, independent judgment of defense counsel. Sole reliance, however, on the representations of the codefendant's counsel, where no independent judgment has been exercised, is unreasonable, and may well be deficient performance.

[7] The codefendant's attorney gave the trial attorney "a list of his witnesses shortly before trial along with a brief synopsis of each witness's testimony." *Rios* v. *Rocha*, supra, 299 F.3d 807.

[8] Two Connecticut cases have discussed, but not decided, whether it is deficient performance for defense counsel to rely solely on the investigative efforts of a prosecutor. In *Johnson* v. *Commissioner of Correction*, 285 Conn. 556, 581, 941 A.2d 248, 265 (2008), our Supreme Court held that trial counsel's reliance on the results of DNA testing performed by the state did not prejudice the petitioner because there was no evidence to establish that additional, independent DNA testing would have provided exculpatory evidence.

In *Davis* v. *Commissioner of Correction*, 147 Conn. App. 343, 351, 81 A.3d 1226 (2013), cert. granted on other grounds, 311 Conn. 921, 86 A.3d 467 (2014), the petitioner argued that "counsel's failure to investigate his case beyond a review of the documentation provided by the prosecution constituted a complete denial of representation." The court appears to have rejected this claim solely on prejudice grounds, concluding that the lack of an investigation did not constitute a structural violation of the petitioner's right to effective assistance of counsel that obviated the need for demonstrating any particular prejudice. Id., 353.

[9] Our conclusion in the present case does not conflict with the court's conclusion in *Gaines* v. *Commissioner of Correction*, supra, 306 Conn. 681–82, that an attorney's investigation is not constitutionally deficient with respect to a potential witness' prior testimony, when the attorney knows the substance of that testimony and decides that it is unhelpful or harmful. To know the substance of potential testimony, an attorney must rely on a reliable source of information, like the defendant, and must actually be aware of the substance of the testimony. See *Mozell* v. *Commissioner of Correction*, 291 Conn. 62, 79–80, 967 A.2d 41 (2009) (counsel's decision not to investigate further reasonable when defendant told him that witness would not cooperate, witness' attorney said that witness would not cooperate, and after he read police report stating that witness was not eyewitness to crime). "Counsel's actions are usually based, quite properly, on informed strategic choices made by the [petitioner] and on information supplied by the [petitioner]. In particular, what investigat[ory] decisions are reasonable depends critically on such information. For example, when the facts that support a certain potential line of defense are generally known to counsel because of what the defendant has said, the need for further investigation may be considerably diminished or eliminated altogether. And when a defendant has given counsel reason to believe that pursuing certain investigations would be fruitless or even harmful, counsel's failure to pursue those investigations may not later be challenged as unreasonable." *Strickland* v. *Washington*, supra, 466 U.S. 690–91.

[10] Some federal courts of appeal have concluded that it is not necessary to decide whether the failure to read the transcripts from a codefendant's trial is deficient performance, instead deciding those cases on the prejudice prong of *Strickland*. See *Nguyen* v. *Archuleta*, 369 Fed. Appx. 889, 894 (10th Cir. 2010); *United States* v. *Dung Vu*, 215 Fed. Appx. 9, 12 (1st Cir.) (deciding ineffective assistance of counsel claim on basis of lack of prejudice when trial attorney did not request transcripts of codefendant's trial), cert. denied, 552 U.S. 828, 128 S. Ct. 45, 169 L. Ed. 2d 42 (2007).

[11] There may be cases where it is not necessary to read the entire transcript of the trial of the codefendant. For instance, codefendants' alleged participation in a crime may be distinct enough from each other to obviate the need to review the codefendant's entire trial transcript. Therefore, defense counsel's failure to order and review the transcript of the codefendant's trial is not per se deficient performance. The scope of counsel's obligation to investigate must be addressed on a case-by-case basis, and we do not intend to suggest a blanket rule for all occasions.

[12] The petitioner argues that failure to cross-examine about a reward can never be "sound trial strategy" pursuant to the holding in *Reynoso* v. *Giurbino*, 462 F.3d 1099, 1110–14 (9th Cir. 2006). The petitioner misinterprets

*Reynoso*, which merely held that under no trial strategy offered by the respondent in that case could the decision not to cross-examine about the reward be "sound," as the trial attorney did not make an informed decision and cross-examining about the reward would not have been harmful to the defense strategy or to the petitioner. Id. Those facts distinguish the present case from *Reynoso*.

---